**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARIANNE RENOIS AS ADMINISTRATOR, FIDUCIARY AND BENEFICIARY OF AND FOR THE ESTATE OF ELLIS DEANGELO, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>- against –<br><br>WVMF FUNDING, LLC, and COMPU-LINK CORPORATION D/B/A CELINK,<br><br>Defendants. | Case No.<br><br>**JURY TRIAL DEMANDED** |

<u>**CLASS ACTION COMPLAINT**</u>

1.      Plaintiff Marianne Renois, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo ("Plaintiff"), by and through her counsel, on behalf of herself and all others similarly situated, alleges against defendants WVMF Funding, LLC ("WVMF") and Compu-Link Corporation d/b/a Celink ("Celink") (collectively "Defendants"), as follows:

**I.      NATURE OF THE ACTION**

2.      This action arises out of injuries caused to borrowers of reverse mortgages and Home Equity Conversion Mortgages ("HECMs") for whom Defendants errantly imposed unnecessary and unlawful force placed hazard insurance and related charges because the borrowers already had hazard insurance policies, and Defendants' refusal to timely remove, refund and/or credit back those charges in conformity with federal law, state law and borrowers' loan agreements.

3.      Beginning in 2018, Celink, on behalf of its lender principals, including WVMF, began imposing force placed hazard insurance on the home that secured Plaintiff's parents'

HECM and reverse mortgage loan, even though Plaintiff maintained hazard insurance on that home.  Thereafter, Plaintiff repeatedly provided notice to Defendants, in writing and orally, that she maintained hazard insurance on the home.  Nevertheless, for over two years, Defendants added and imposed force placed insurance premiums and related charges, as well as additional interest and mortgage insurance based on the added forced placed insurance premiums and related charges to the balance of Plaintiff's parents' loan.  Finally, in July 2020, Celink admitted Defendants' mistake and refunded some or all of the premiums for the force placed hazard insurance, but none of the related charges, interest and mortgage insurance were refunded.

4.    On behalf of herself and classes of similarly situated HECM and reverse mortgage borrowers, Plaintiff pleads the following claims against WVMF and Celink:

(a)    Violations of Real Estate Settlement Procedures Act ("RESPA") 12 U.S.C. §2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37;

(b)    Breach of Contract,

(c)    Violations of New York Real Property Law ("RPL") §280-b;

(d)    Violations of New York General Business Law ("GBL") §349, *et seq*. and the consumer protection laws of other States; and

(e)    Unjust enrichment.

## II.    JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and RESPA 12 U.S.C. §§ 2605(f) and 2614.  The Court has supplemental jurisdiction over Plaintiff's and the Classes' state and common law claims pursuant to 28 U.S.C. §1367.

6.    This Court further possesses subject matter jurisdiction under 28 U.S.C.

§1332(d) and the Class Action Fairness Act ("CAFA") because this is a class action in which the subject matter in controversy exceeds the sum or value of $5,000,000, there are in excess of 100 class members and members of the Class are citizens of a state different from that of Defendants.

7.      This Court has personal jurisdiction over all Defendants.  Defendants are each authorized to do business in New York, maintain continuous and systemic contacts with New York and this District, do business in New York and this District specifically related to the claims alleged in this Complaint, and have sufficient minimum contacts with New York so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under 28 U.S.C. §1391.

## III.    THE PARTIES

9.      Plaintiff Renois resides in a home that is the subject of this action located in New Hyde Park, New York.  Plaintiff Renois is the administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, her deceased father.  Plaintiff Renois' mother deceased prior to her father.  In 2010, Plaintiff Renois' parents obtained a HECM from Mortgage Enterprises, Ltd. and Financial Freedom.  That HECM loan was sold and acquired by WVMF.  Celink is the subservicer of Plaintiff Renois' parents' HECM and reverse mortgage loan.

10.     Defendant WVMF is a Delaware limited liability company with its principle place of business located within this District at 1251 Avenue of the Americas, New York, New York.  As of 2018, it is the owner and lender of Plaintiff's parents' HECM loan.  It is the principal to Celink, who is WVMF's agent.  WVMF is in contractual privity with Plaintiff in

3

her capacity as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo.

11.     Defendant Celink is a Michigan corporation with its principal place of business in Lansing, Michigan.  Celink claims on its website to be the largest independent servicer of reverse mortgages in the United States, and its clients include lenders, banks, and insurance companies.  Celink claims to have developed and uses a proprietary Java-based reverse mortgage servicing platform, ReverseServ$^{TM}$, for servicing HECM loans.  According to its website, "Celink's reverse mortgage subservicing portfolio currently exceeds $40 billion."  "In addition, it is licensed to service reverse mortgages in all 50 states, including Puerto Rico and the U.S. Virgin Islands."  Celink is the subservicer of Plaintiff's parents' HECM loan.  Celink is the agent and attorney-in-fact for WVMF.  Celink is in contractual privity or near privity with Plaintiff in her capacity as the administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo.

## IV.    BACKGROUND

12.     A reverse mortgage or HECM loan is a home loan for seniors that require no monthly mortgage payments.  Borrowers have the option of choosing to pay their homeowner's insurance or having the lender or servicer pay them from HECM loan proceeds.

13.     Federally-insured HECM loans were developed and authorized by Congress to enable seniors to convert the equity in their homes to cash to help them meet their monthly expenses and protect them from losing their homes.  According to a website maintained by the United States Department of Housing and Urban Development ("HUD"), "The Home Equity Conversion Mortgage (HECM) is Federal Housing Administration's (FHA) reverse mortgage program which enables you to withdraw some of the equity in your home.  You choose how you

want to withdraw your funds, whether in a fixed monthly amount or a line of credit or a combination of both."  Source:  https://www.benefits.gov/benefits/benefit-details/709.

14.    According to the United States Government Accountability Office ("GAO"), "While HECMs have the potential to play a key role in meeting the needs of seniors facing financial hardship or seeking to improve their quality of life, the product is relatively complex and costly and the population it serves is vulnerable."  GAO, Testimony Before the U.S. Senate, Special Committee on Aging, *Reverse Mortgages[,] Product Complexity and Consumer Protection Issues Underscore Need for Improved Controls over Counseling for Borrowers* (June 29, 2009) (Statement of Matthew J. Scire, Director of Financial Markets and Community Investment).

15.    The HECM agreements between a HECM lender / mortgagee and a borrower / mortgagor generally consists of a uniform note, a uniform mortgage or deed of trust, and a uniform conversion loan agreement, each of which have standard terms that lenders are required by HUD to use.  Those HECM loan agreements must conform to and comply with the National Housing Act and federal regulations promulgated by HUD and FHA, and the state laws in which the properties are located.

16.    In New York, HECM loans are authorized by New York RPL §§280, 280-a, 280-b and New York Banking Law §6-h, along with New York rules and regulations.

## V.    STATEMENT OF FACTS

17.    In response to false and deceptive statements by Celink asserting that no hazard insurance policy was maintained on the home that secured Plaintiff's parents' HECM and reverse mortgage loan, Plaintiff Renois provided oral and written notice to Celink, as agent for

WVMF, on multiple occasions, including on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020 and June 8, 2020, that she maintained hazard insurance on her parents' home that secures the HECM loan and provided proof of the hazard insurance policy.

18.    WVMF and Celink ignored those notices and demonstrations from Plaintiff and persisted in obtaining and charging Plaintiff's parents' reverse mortgage and HECM loan force placed insurance premiums and related charges, including inspection fees and attorney fees / costs, from June 2018 until July 2020.    Since those force placed insurance premiums and charges were added to the loan principal, WVMF and Celink also charged, and continues to charge, interest on those premiums and charges at an annual rate of 5.39% and Mortgage Insurance Premiums ("MIP") at an annual rate of .5%.

19.    The force placed insurance policy obtained by Celink in 2018 had an annual premium of $2,625.00.  WVMF and Celink imposed and added those premiums to Plaintiff's parents' reverse mortgage and HECM loan.

20.    The force placed insurance policy obtained by Celink in 2019 had an annual premium of $3,000.00.  WVMF and Celink imposed and added those premiums to Plaintiff's parents' reverse mortgage and HECM loan.

21.    Finally, on July 30, 2020, Celink admitted in writing that Plaintiff maintained the required hazard insurance on her parents' home for the *entire time* WVMF and Celink had imposed a force placed insurance policy and related fees, interest and MIP on her parents' HECM loan.  Celink accompanied that admission with a credit of some or all of the insurance premiums to the HECM and reverse mortgage loan, long after the 15-day refund deadline imposed by RESPA and New York law.  WVMF and Celink still have not refunded or credited

back the charges, interest and MIP related to its imposition of force placed insurance on Plaintiff Renois parents' loan.

22.    WVMF and Celink continue to demand payment of those unlawful amounts added to the loan related to their imposition of force placed insurance, both in monthly statements and in foreclosure proceeding ongoing in the New York State courts.

**Breach of Loan Agreements Due to Violations of Federal Law**

23.    The standard HUD-mandated HECM loan agreements mandate that lenders and servicers comply with federal law and the law in the State where the property is located, here New York.

24.    Plaintiff Renois' parents' uniform and standardized *Mortgage* agreement (the "*Mortgage Agreement*") states at Section 17,

> **Governing Law; Severability**.  *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.*  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

(Emphasis added).

25.    The same contractual obligation to comply with federal law and New York law is contained in standardized *Home Equity Conversion Loan Agreements* (the "*Conversion Loan Agreement*").  Section 6.4 of Plaintiff Renois' parents' *Conversion Loan Agreements* states: "**Governing Law; Severability**.  *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.*"  (Emphasis added).

26.    WVMF and Celink breached Plaintiff Renois' parents' and Class members' loan

agreements due to their violations of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g). Like 11 N.Y.C.R.R. §227.5, RESPA and RESPA Regulation X mandate the refund of all force placed insurance premiums and related fees within 15 days from notice that a homeowner maintains hazard insurance. Additional violations by Celink result from the renewal of a force placed insurance policy when as here, Celink was provided with actual notice that Plaintiff Renois maintained hazard insurance on her parents' home that secured the HECM loan.

**Breach of Loan Agreement Due to Violations of New York Law**

27.    The standard HUD-approved HECM loan agreements mandate that lenders and servicers comply with the law in the State where the property is located, here New York.

28.    In New York, 11 N.Y.C.R.R. §227.5 mandates the refund of all force placed insurance premiums and related fees within 15 days from notice that a borrower maintains hazard insurance. Even though Plaintiff Renois provided oral and written notice to Celink on multiple occasions that she maintained hazard insurance on her parents' home that secures the HECM and reverse mortgage loan, WVMF and Celink persisted in obtaining and charging Plaintiff parents' loan force placed insurance premiums and related charges, interest and MIP until July 2020, several years past the 15-day refund deadline.

29.    In New York, RPL §280-b prevents a lender, servicer or subservicer from making a homeowners' insurance premium payment for a reverse mortgage when the borrower's homeowners' insurance premiums are not in arrears. Since RPL §280-b became effective, WVMF and Celink violated these requirements of RPL §280-b.

30.    In New York, RPL 280-b further mandates the following notice appear on all

monthly mortgage statements when the reverse mortgage lender or its servicer or subservicer is paying a borrower's homeowners' insurance:

> YOUR TAXES AND INSURANCE ARE CURRENTLY BEING PAID BY THE PROCEEDS OF THIS MORTGAGE.  THE FUNDS THAT HAVE BEEN SET ASIDE ARE EXPECTED TO BE EXHAUSTED AFTER THE TAX AND INSURANCE PAYMENTS OF (SPECIFY EXPECTED MONTH AND YEAR). IF THE PROCEEDS OF THIS MORTGAGE CANNOT PAY THE TAXES AND INSURANCE, YOU MUST PAY THESE OBLIGATIONS OR YOUR HOME MAY BE LOST TO FORECLOSURE. PLEASE NOTE THAT AS TAX AND INSURANCE AMOUNTS CAN VARY YOU SHOULD CONTINUE TO REVIEW THIS NOTICE FOR CHANGES.

Since RPL §280-b became effective, WVMF and Celink violated these requirements of RPL §280-b.

31.    WVMF and Celink breached Plaintiff parents' and New York Subclass members' loan agreements due to its force placed insurance violations of 11 N.Y.C.R.R. §227.5 and RPL §280-b discussed above.  As a result, all fees, costs, charges, penalties, interest and mortgage insurance added to HECM and reverse mortgage loan as a result of those violations constitutes injury to Plaintiff Renois and the New York Subclass for Celink's breach of contract.

32.    WVMF's and Celink's RPL §280-b violations not only constitute breach of Plaintiff's parents' HECM loan agreement, but constitute a separate and independent claim and private right of action under RPL §280-b.

**False and Deceptive Statements and Omissions Made to Plaintiff Renois**

33.    In a letter dated August 28, 2018, Celink sent a "second and final notice" representing to Plaintiff Renois that the hazard insurance policy she maintains for the home that secures her parents' HECM loan had expired.  That statement was false and deceptive, based on

9

the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home. All prior and subsequent letters sent by Celink to Plaintiff Renois making the same false accusations were equally deceptive.

34.    In a letter dated October 1, 2018, Celink sent a letter to Plaintiff Renois stating that Celink had obtained a force placed insurance policy on the home that secures her parents' HECM loan because Plaintiff Renois had not maintained a hazard insurance policy on the home. That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home. Celink's October 1, 2018 further stated that: "The cost of any insurance we purchase will be added to your loan balance, …."

35.    In a letter dated June 1, 2020, Celink sent a letter to Plaintiff Renois stating that Celink would renew the force placed insurance policy on the home that secures her parents' HECM loan because Plaintiff Renois had not maintained a hazard insurance policy on the home. That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.

36.    In a letter dated June 23, 2020, Celink sent a letter representing to Plaintiff Renois that the hazard insurance policy she maintains for the home that secures her parents' HECM loan had expired. That statement was false and deceptive, based on the prior oral and written notices provided by Plaintiff Renois to Celink demonstrating the purchase and maintenance of hazard insurance on that home.

37.    In two letters dated July 30, 2020, Celink acknowledged the falsity of its prior

letters disputing the purchase and maintenance by Plaintiff Renois of hazard insurance on the home that secures her parents' HECM loan.

38.     Since at least 2018 and continuing to the present, Celink has sent Plaintiff Renois monthly statements deceptively misstating the amount owed on her parents' HECM loan, due to the addition of unlawful fees, charges, costs, penalties, interest and mortgage insurance.

**Defendants' Unlawful Conduct Caused Damages and Financial Injury**

39.     Plaintiff Renois, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, has been damaged and injured as a direct, proximate and foreseeable result of the unlawful acts of WVMF and Celink.

40.     All force placed insurance premiums and related charges not refunded and credited back to Plaintiff's parents' loan comprise injury and financial damage directly, proximately and foreseeably caused by Defendants' unlawful acts. Since those force placed insurance premiums and charges were added to the loan principal, WVMF and Celink also charged, and continue to charge, interest on those premiums and charges at an annual rate of 5.39% and Mortgage Insurance Premiums ("MIP") at an annual rate of .5%.

41.     According to documents submitted to the New York State court, as of July 31, 2019, Plaintiff's parent's HECM and reverse mortgage loan was assessed $5,667.19 in force placed "Insurance" charges.  The first of those force placed insurance charges comprising a full-year premium plus taxes and surcharges was added by Celink to Plaintiff's parents' HECM and reverse mortgage loan balance on or about October 4, 2018 in the amount of $2,644.69. Thereafter, interest and MIP accrued on the unlawfully-added force placed insurance charges.

42.     According to documents submitted to the New York State court, as of July 31,

2019, attorneys' fees, inspection and preservation fees alone exceeding $5,000 have been added

to her parents' HECM loan.  Those fees, costs, charges and penalties are listed on her monthly

statements as "Payment for Property Inspection," "Payment for Attorney Fees / Costs" and

"Payment for Property Preservation."  All, or a portion, of those fees, costs, and charges, are

improper fees as related to and stemming from Defendants' imposition of unnecessary force

placed insurance.

43.    In addition to pecuniary injuries, Plaintiff and Class members have suffered actual

injuries including but not limited to annoyance, harassment, time, frustration, anger, and anxiety

proximately and foreseeably caused by Defendants' unlawful conduct.

## VI.    CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action pursuant to FED. R. CIV. P. 23(a), 23(b)(2) and

23(b)(3) on behalf of herself individually and the Classes defined as follows:

(a).    The Class.  All borrowers, and heirs and estates of borrowers, who had a HECM
or reverse mortgage loan serviced or subserviced by Celink since December 21, 2015,
and for whom Celink failed to timely refund force placed insurance and related fees,
charges, penalties, interest or mortgage insurance premiums.

(b).    The New York Subclass.  All members of the Class where the home secured by
the mortgage was or is located in New York State.

45.    Excluded from the Class and New York Subclass (collectively, the "Classes")

are Defendants and their parent(s), subsidiary(ies), officers, directors, employees, partners and

co-venturers.  Also excluded are any federal, state, or local governmental entities, any judicial

officer presiding over this action and the members of his/her immediate family and judicial staff

assigned to this action.

46.    Upon information and belief, the Classes contain thousands of individuals whose

identities can be readily ascertained from Defendants' books and records. Plaintiff does not know the exact size or identities of the proposed Classes, since such information is in the exclusive control of Defendants.

47.     Common questions of law and fact raised in this action on behalf of the Classes include the following:

(a)     Whether Defendants charged Class members for force placed insurance when Class members already maintained hazard insurance;

(b)     Whether Defendants violated RESPA and the New York force placed insurance laws and regulations;

(c)     Whether Defendants violated New York RPL §280-b;

(d)     The amounts in which Class members were damaged by Defendants' unlawful and inequitable acts, practices and conduct; and

(e)     Whether the Class members are entitled to restitution, disgorgement, a constructive trust, declaratory relief and/or injunctive relief.

48.     Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff retained able counsel with extensive experience representing consumers and home borrowers in class action litigation. The interests of Plaintiff are coincident with, and not antagonistic to, the interests of the other Class members.

49.     The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

50.     The prosecution of separate actions by individual members of the Classes would

create a risk of inconsistent or varying adjudications with respect to individual Class members.

51.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Since the damages suffered by Class members may be relatively small, the expense and burden of individual litigation make it impossible for the Class members to individually redress the wrongs done to them.   The Classes are readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation.   The Court will encounter no difficulty in managing this action as a class action.

## VII.    CELINK IS AN AGENT, ATTORNEY-IN-FACT AND THE DESIGNATED PARTY TO PERFORM THE LENDERS' OBLIGATIONS UNDER HECM AND REVERSE MORTGAGE AGREEMENTS, IN PRIVITY OR NEAR PRIVITY WITH PLAINTIFF AND CLASS MEMBERS

52.     Celink was the express and implied agent of WVMF for Plaintiff's parents' and Class members' HECM and reverse mortgage loans.   Celink was designated by WVMF and other lender principals to perform the lenders' obligations under those HECM and reverse mortgage agreements.   Celink was and is in privity, or near privity, with Plaintiff and Class members such at it is liable for breach of contract.

53.     Celink was, is and remains the express and implied agent of WVMF and other lender principals for Plaintiff and Class members' HECM loans.

54.     Celink was and is in privity, or near privity, with Plaintiff and Class members such at it is liable for breach of contract.

55.     In the foreclosure lawsuits filed in the name of WVMF against Plaintiff in the New York State courts, Celink has filed affidavits asserting that WVMF has designated Celink as its "attorney in fact" and "loan servicing agent" concerning the HECM and reverse mortgage loans owned and/or serviced by WVMF.

14

56.     As WVMF's agent, attorney-in-fact and power of attorney, Celink retains the law firm(s) that file HECM loan foreclosure lawsuits in WVMF's and other lender principals' names in the New York State courts.  For example, in the foreclosure lawsuit filed by WMVF against Plaintiff in the New York State courts, WVMF's counsel sent Plaintiff a letter representing its "client" was not WVMF, but rather "CELINK REVERSE as servicing agent for WVMF Funding LLC …."

## VIII.  WVMF IS JOINTLY RESPONSIBLE AND LIABLE FOR SERVICING HECM LOANS

57.     In 2018, WVMF acquired Plaintiff's HECM and reverse mortgage loan from Mortgage Enterprises, Ltd. and/or Financial Freedom.

58.     The standard HECM loan agreements, including Plaintiff's parents' loan agreements, establish that WVMF, as successor, is bound to all obligations set forth in those agreements.  *See Mortgage Agreement* at ¶15:  "Successors and Assigns Bound; Joint and Several Liability.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender.");  *Conversion Loan Agreement* at ¶6.2:  "Successors and Assigns Bounds [sic]; … The covenants and agreements of this Loan Agreement shall bind and benefit the successors and assigns of Lender.");  *Fixed Rate Note – Closed End (Home Equity Conversion Mortgage)* at ¶1:  "Lender means Mortgage Enterprises, LTD, Inc. and its successors and assigns.").

59.     As set forth in Plaintiff's parents' and Class members' HECM and reverse mortgage loan agreements, WVMF is the assignee and successor of loans, loan pools or loan servicing rights it has originated or acquired.

60.     Many HECM loans are securitized and sold to investors pursuant to the

Government National Mortgage Association ("Ginnie Mae") Mortgage-Backed Securities Program for HECM loans.

61.     Under the Ginnie Mae Mortgage-Backed Securities Program, investors purchase "participations" in HECM securities issued by approved lenders, with each participation representing a *pro-rata* share of interest and principle in the HECM loan.  *See* HUD Handbook 5500.3 Rev. 1, Chpt. 35-1.  The sponsoring HECM lender is the Issuer of the pool and generally remains the servicer and legal (but not beneficial) owner of the securitized pool of HECM loans.

62.     A Ginnie Mae Issuer of HECM securities is subject to obligations set forth in the Ginnie Mae Mortgage Backed Securities Guide, HUD Handbook 5500.3, Rev. 1.  *See* 24 C.F.R. § 320.1 ("All such [modified pass-through securities] transactions are governed by the specific terms and provisions of the Association's Mortgage-Backed Securities Guides (MBS Guides) and contracts entered into by the parties.").

63.     According to the Ginnie Mae MBS Guide, Ch. 21, "The Transferee Issuer *must assume* all the duties, obligations, and liabilities of the Transferor Issuer under the applicable Guaranty Agreement."  (Emphasis added).  Chapter 21 of that same MBS Guide confirms, "The transfer must have Ginnie Mae's prior written approval ...."

64.     According to the Ginnie Mae MBS Guide, Ch. 4, "The Issuer is fully responsible for the administration of the securities *and the servicing of the pooled mortgages*."  (Emphasis added).

65.     Pursuant to HUD regulations governing HECM loans and loan servicing, WVMF became the successor to Mortgage Enterprises, Ltd.'s and/or Financial Freedom's obligations and liabilities upon acquisition of HECM servicing rights, loans and/or loan pools.

Even while WVMF contracted with Celink as its agent to perform WVMF's servicing obligations, WVMF remains liable for all servicing failures. *See* 24 C.F.R. §203.502(a) ("The servicer must fully discharge the servicing responsibilities of the mortgagee as outlined in this part."); 24 C.F.R. §206.201(c) (same).

66.    Like HUD, Ginnie Mae likewise holds the servicer responsible for any servicing activities, including those performed by a subservicer. *See* Ginnie Mae 5500.3, Rev. 1, Ch. 4 ("The Issuer remains fully responsible for the performance of any servicing functions that have been delegated to a subservicer.").

67.    Issuers must comply with both Ginnie Mae and HUD requirements, including those rules concerning the obligations of issuers, successors, and transferees. *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4. Issuers must also comply with rules on subservicers. For instance, they can only contract with a Ginnie Mae-approved subcontractor. *See* Ginnie Mae, 5500.3, Rev. 1, Chapter 4, 4-3. They can also subcontract, some, but not all, of their servicing functions. *See Id.* at 4-1, 4-3. The master servicer will remain responsible for the performance of any servicing functions that it delegated to its subservicer. *Id.* at 4-2(B).

68.     Pursuant to Ginnie Mae's rules, regulations and agreements governing the Mortgage-Backed Securities Program, WVMF became the successor to Mortgage Enterprises, Ltd.'s and/or Financial Freedom's obligations and liabilities upon acquisition of Mortgage Enterprises, Ltd.'s and/or Financial Freedom's HECM servicing rights, loans and/or loan pools. *See* Ginnie Mae MBS Guide 5500.3, Rev. 1, Appendix III-1 ("The Issuer agrees to be responsible and liable for servicing the mortgages, including any acts or omissions of any subservicer in connection therewith."); *Id.* at Appendix VIII-03, §2.02 ("Buyer accepts such

assignment and signifies its assumption of all duties and obligations (from the effective date of such Guaranty Agreement(s) and/or Contractual Agreement(s)) of the Seller as "Issuer" under such Agreement(s), per the schedule in Section 2.03); *Id.* Ch. 21-11(3) ("Ginnie Mae's execution of the Assignment Agreement (Appendix VIII-8) evidences its approval and is the date upon which the Transferee Issuer becomes the Issuer of record, assuming all rights and responsibilities as Issuer as of such date.").

69.     WVMF is also liable as the successor or assignee of Mortgage Enterprises, Ltd.'s and/or Financial Freedom's pursuant to Uniform Commercial Code §§ 3-306 and 9-404.

**FIRST CAUSE OF ACTION**

VIOLATIONS OF **RESPA** AND **RESPA** REGULATION **X**

(AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE CLASS)

70.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

71.    Celink, as agent for WVMF and other lender / servicer principals, engages in the practice of purchasing force placed insurance and failing to refund force placed insurance premiums and related fees and charges in violation of RESPA and RESPA Regulation X.

72.    RESPA 12 U.S.C. §2605(k) prohibits a mortgage lender or servicer from obtaining force placed hazard or property insurance for any borrower that maintains a hazard insurance policy for the property that secures a mortgage loan, including a HECM and reverse mortgage loan.

73.    RESPA 12 U.S.C. §2605(l) further prohibits a mortgage lender or servicer from imposing any charges for force placed insurance for any property securing a federally-related mortgage unless it has *both* served the notices required under Section 2605(l)(1) *and also* not been provided proof permitted under Section 2605(l)(2) that the borrower maintains the required hazard or property insurance.

74.    RESPA 12 U.S.C. §2605(l)(3) mandates that "[w]ithin 15 days of the receipt by a servicer of conformation of a borrower's existing insurance coverage" a mortgage lender or servicer "shall" terminate any force placed insurance policy *and* "refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and

any related fees charged to the consumer's account with respect to the force-placed insurance during such period."

75.    RESPA Regulation X, 12 C.F.R. §1024.37(g), further mandates that Celink terminate any force placed insurance policy and refund "all force-placed insurance premium charges and related fees" within "15 days" of receiving notice from the borrower that she maintains hazard insurance on the subject property.

76.    Moreover, RESPA Regulation X, 12 C.F.R. §1024.37(e) prohibits a mortgage lender or servicer from billing the borrower for the premiums or fees from a renewed force placed insurance policy unless and until the notice required by Section 1024.37(e) is sent and only thereafter has not been provided proof that the borrower has purchased the required hazard or property insurance.

77.    As demonstrated by the experience of Plaintiff Renois, WVMF and Celink violate RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g).

78.    As detailed above, Celink, as agent for WVMF, unlawfully imposed force placed insurance premiums and related interest, MIP, "Attorney fees / costs" and "property inspection" fees for over two years *after* Plaintiff Renois provided proof to Celink and WVMF on numerous occasions that she purchased and consistently maintained hazard insurance on the property that secured her parents' HECM and reverse mortgage serviced by Celink and WVMF.

79.    Among other times, Plaintiff Renois provided written notice and proof to Defendants that she purchased and maintained hazard insurance on the property securing her parents' HECM loan on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020 and June 8, 2020.  Nevertheless, and in violation of RESPA and RESPA Regulation X,

Celink, as agent for WVMF, obtained a force placed insurance policy effective June 16, 2018 for the same property already insured by Plaintiff Renois.  Celink, as agent for WVMF, unlawfully renewed that force placed insurance policy effective June 16, 2019 and possible other times.

80.     Finally, on July 30, 2020, over two years after it began unlawfully adding force placed insurance premiums and related fees, and years past the 15-day deadline imposed by RESPA and RESPA Regulation X, Celink admitted Defendants' mistake and refunded *only* the force placed insurance premiums added by Celink to Plaintiff Renois' parents' HECM and reverse mortgage loan.

81.     In violation of RESPA and RESPA Regulation X, Celink and WVMF still have not refunded inflated interest and MIP charges as a result of the force placed insurance premiums added to the principal of Plaintiff's parents' loans.

82.     Defendants also have not refunded fees and charges related to the force placed insurance policies, including "attorney fees / costs," "property inspection" fees and increased interest and mortgage insurance charges, causing injury and damage to Plaintiff Renois.

83.     In or about July 2018, Celink and WVMF began imposing "property inspection" fees of $20.00 each, including two such fees in July 2018.  Nearly every month thereafter, Celink and WVMF have imposed additional "property inspection" fees.  Upon information and belief, those fees are related to Defendants' unlawful imposition of force placed insurance.

84.     As of July 31, 2019, according to a document filed by Celink's counsel in the New York State Supreme Court, Celink and/or WVMF paid $4,731.67 in attorneys' fees related to the Renois foreclosure.  Upon information and belief, those fees have been added to the balance of Plaintiff Renois' parents' HECM loan, in part, resulting from Celink's and WVMF's

unlawful imposition of force placed insurance.

85.     Pursuant to RESPA 12 U.S.C. §§ 2605(f) and 2614, Celink and WVMF are liable to Plaintiff Renois, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, and the Class for its violations of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g).

86.     Pursuant to RESPA 12 U.S.C. §§ 2605(f) and 2614, Plaintiff and the Class are entitled to pursue claims against WVMF and Celink for damages, statutory damages, additional damages, injunctive relief, costs and attorneys' fees to redress WVMF's and Celink's violations of RESPA and RESPA Regulation X.

## SECOND CAUSE OF ACTION

### VIOLATIONS OF NEW YORK RPL §280-B

#### (AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE NEW YORK SUBCLASS)

87.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

88.    Plaintiff's parents' reverse mortgage is a "reverse mortgage loan" entitled to the protections and rights set forth in 280-b.

89.    New York RPL §280-b(5) makes its unlawful for any reverse mortgage lender, servicer or subservicer to make a homeowners' insurance premium payment for a reverse mortgage loan that is not in arrears on its obligation to maintain homeowners' insurance.

90.    As demonstrated by the experience of Plaintiff Renois, WVMF and Celink violate New York RPL §280-b(5) by making homeowners' insurance premium payments when reverse mortgage loan borrowers' homeowners' insurance premiums are not in arrears.

91.    New York RPL §280-b(4)(b) mandates that the following notice appear on all periodic account statements during the time when a reverse mortgage loan lender, servicer or subservicer is paying homeowners' insurance payments for a reverse mortgage loan:

> YOUR TAXES AND INSURANCE ARE CURRENTLY BEING PAID BY THE PROCEEDS OF THIS MORTGAGE.  THE FUNDS THAT HAVE BEEN SET ASIDE ARE EXPECTED TO BE EXHAUSTED AFTER THE TAX AND INSURANCE PAYMENTS OF (SPECIFY EXPECTED MONTH AND YEAR). IF THE PROCEEDS OF THIS MORTGAGE CANNOT PAY THE TAXES AND INSURANCE, YOU MUST PAY THESE OBLIGATIONS OR YOUR HOME MAY BE LOST TO FORECLOSURE. PLEASE NOTE THAT AS TAX AND INSURANCE AMOUNTS CAN VARY YOU SHOULD CONTINUE TO REVIEW THIS NOTICE FOR CHANGES.

92.    As demonstrated by the experience of Plaintiff Renois, WVMF and Celink

violate New York RPL §280-b(4)(b) by failing to provide the mandated notice on periodic loan statements, including monthly statements.

93.     Plaintiff Renois, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, and New York Subclass members (or their estates) have been injured as a direct, proximate and foreseeable result of Celink's and WVMF's violations of New York RPL §280-b.  Those injuries include the imposition or assessment of forced placed homeowners' insurance premiums and related charges, fees, penalties, interest and MIP.

94.     Pursuant to New York RPL §280-b(8), Celink and WVMF are liable to Plaintiff Renois, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, and the New York Subclass for its violations of New York RPL §280-b.

95.     Plaintiff and the New York Subclass are entitled to pursue claims against WVMF and Celink for damages, treble damages, injunctive relief, costs and attorneys' fees pursuant to New York RPL §280-b(8) to redress WVMF's and Celink's violations of RPL §280-b.

## THIRD CAUSE OF ACTION

**BREACH OF CONTRACT BY REASON OF VIOLATIONS OF FEDERAL LAW**

**(AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE CLASS)**

96. Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

97. Plaintiff and Class members are the borrowers or representatives of borrowers to HECM loan agreements. Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

98. WVMF and Celink were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

99. WVMF and Celink were in privity, or near privity, with Plaintiff and Class members concerning the performance of obligations under the loan agreements.

100. The standard HECM loan agreements require the lenders, servicers, subservicers and agents to comply in all respects with federal law and the law of the jurisdiction where the property is located.

101. For example, Plaintiff Renois' parents' standardized *Mortgage Agreements* each state at Section 17,

> **Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. (Emphasis added).

102.   The same contractual obligation to comply with federal and New York State law are in contained in Plaintiff Renois' parents' uniform and standardized *Conversion Loan Agreement*, Section 6.4, providing:  "**Governing Law; Severability**.  *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located."*  (Emphasis added).

103.   As detailed above and below, WVMF and Celink breached Plaintiff Renois' parents' and the Classes' HECM and reverse mortgage loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of RESPA 12 U.S.C. §§ 2605(k) and (l) and RESPA Regulation X, 12 C.F.R §1024.37(e) and (g) by failing to refund force placed insurance premiums and related fees, charges and penalties within 15 days of receiving notice demonstrating that the borrower maintained hazard insurance and for unlawfully renewing force placed insurance policies.

104.   Plaintiff, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, and Class members have been injured and damaged as a direct, proximate and foreseeable result of WVMF's and Celink's breaches of Plaintiff's parents and Class members' HECM and reverse mortgage loans by reason of violations of federal law.

105.   As a direct, proximate and foreseeable result WVMF's and Celink's breaches of contract, Defendants imposed and/or collected force placed insurance premiums and related fees, costs, charges, penalties, interest and MIP that have been added to the principal of Plaintiff's parents' and Class members' HECM and reverse mortgage loans, paid from the retained equity in their homes or paid by Plaintiff and Class members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiff and Class members.

106.   To remedy WVMF's and Celink's breaches of contract, Plaintiff and the Class seek damages, equitable remedies including an injunction and all other appropriate remedies.

107.   As it pertains to Plaintiff Renois individually, as administrator, fiduciary and beneficiary of the estate of Ellis DeAngelo, WVMF and Celink breached Plaintiff Renois' parents' HECM and reverse mortgage loan agreements, including their *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of WVMF's and Celink's violations of RESPA 12 U.S.C. §§ 2605(e), (k) and (l) and RESPA Regulation X, 12 C.F.R. §1024.37(e) and (g). Plaintiff Renois, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, has been financially injured and damaged as a direct and proximate result of WVMF's and Celink's breaches of contract by reason of the unlawful forced place insurance premiums, fees, costs, charges, penalties, additional interest and MIP added to the balance of her parents' HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and MIP assessments.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT BY REASON OF VIOLATIONS OF NEW YORK LAW

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF AND THE NEW YORK SUBCLASS)

108.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

109.    Plaintiff and Class members are the borrowers or representatives of borrowers to HECM loan agreements.   Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

110.    WVMF and Celink were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

111.    WVMF and Celink were in privity, or near privity, with Plaintiff and New York Subclass members concerning the performance of obligations under their loan agreements.

112.    Plaintiff and all members of the New York Subclass are parties to uniform and standardized reverse mortgage loan agreements.

113.    The standard loan agreements require the lenders, servicers, subservicers and agents to comply in all respects with federal law and the law of the jurisdiction where the property is located.   For Plaintiff and all New York Subclass members, that law is the law of New York State due to the location of Plaintiff's parents' and Subclass members' homes being located within New York State.

114.    Plaintiff Renois' parents' and the other Class members' standardized *Mortgage Agreements* each state at Section 17,

28

**Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.* In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable. (Emphasis added).

115. The same contractual obligation to comply with federal and New York State law are contained in Plaintiff Renois' parents' uniform and standardized *Conversion Loan Agreement*, Section 6.4, providing: "**Governing Law; Severability**. *This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located."* (Emphasis added).

116. As detailed above, WVMF and Celink breached Plaintiff Renois' parents' and the New York RESPA Subclasses' loan agreements, including the *Mortgage Agreements* and *Conversion Loan Agreements*, by reason of their violation of 11 N.Y.C.R.R. §227.5 by failing to refund force placed insurance premiums and related fees, charges, penalties, interest and MIP within 15 days of receiving notice demonstrating that the borrower maintained hazard insurance on homes subject to the reverse mortgage agreements.

117. As detailed above, WVMF and Celink breached Plaintiff Renois' parents' and the New York RESPA Subclasses' loan agreements by reason of their violations of New York RPL §280-b, since that statute became effective, by unlawfully charging forced placed homeowners' insurance premiums and related fees, charges, penalties, interest and MIP for reverse mortgage loans that were not in arrears on their homeowners' insurance payments and by failing to provide mandated notices on periodic loan statements.

118. Plaintiff, as administrator, fiduciary and beneficiary of and for the estate of Ellis

DeAngelo, and New York Subclass members have been injured and damaged as a direct, proximate and foreseeable result of WVMF's and Celink's breaches of Plaintiff's parents' and Subclass members' loan agreements by reason of violations of New York law.

119.    As a direct, proximate and foreseeable result of WVMF's and Celink's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and MIP that have been added to the principal of Plaintiff's parents' and Subclass members' reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiff and Subclass members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiff and Subclass members.

120.    To remedy WVMF's and Celink's breaches of contract, Plaintiff and the New York Subclass seek damages, equitable remedies including an injunction and all other appropriate remedies.

121.    As it pertains to Plaintiff Renois individually, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, Celink breached Plaintiff Renois' parents' reverse mortgage loan agreements, including their *Mortgage Agreement* and *Conversion Loan Agreement*, by reason of WVMF's and Celink's violations of 11 N.Y.C.R.R §227.5.  Plaintiff Renois, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, has been financially injured and damaged as a direct and proximate result of WVMF's and Celink's breaches of contract by reason of the unlawful forced place insurance premiums, fees, costs, charges, penalties, additional interest and MIP added to the balance of her parents' HECM and reverse mortgage, which injuries are continuing and increasing by reason of the addition of further inflated interest and MIP assessments.

## FIFTH CAUSE OF ACTION

### BREACH OF CONTRACT

### (AGAINST ALL DEFENDANTS ON BEHALF OF PLAINTIFF AND THE CLASS)

122. Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

123. Plaintiff and Class members are the borrowers or representatives of borrowers to HECM loan agreements. Those HECM loan agreements are uniform and standardized instruments that include a *Conversion Loan Agreement* and *Mortgage Agreement*.

124. WVMF and Celink were obligated to comply with the terms of those loan agreements as the lender, servicer, subservicer, agent of the lender or servicer, successor to the lender or servicer or attorney-in-fact.

125. WVMF and Celink were in privity, or near privity, with Plaintiff and New York Subclass members concerning the performance of obligations under their loan agreements.

126. Plaintiff and all members of the New York Subclass are parties to uniform and standardized reverse mortgage loan agreements.

127. Plaintiff's parents' *Conversion Loan Agreement* and *Mortgage Agreement* and the Class members' HECM *Conversion Loan Agreements* and *Mortgage Agreements* contain substantially similar provisions regarding force placed insurance requirements and its placement by Defendants. The force placed provisions from Plaintiff's parents' mortgage are set forth in Paragraphs 2, 3, 5 of the *Mortgage Agreement*, and a true and correct copy of that mortgage agreement is attached to this Complaint as **Exhibit A**. The force placed provisions from Plaintiff's parents' *Conversion Loan Agreement* are set forth in Paragraph

31

2.10 of that agreement, and a true and correct copy of that agreement is attached to this Complaint as **Exhibit B**.

128.    Plaintiff's parents' and Class members' *Conversion Loan Agreements* and *Mortgage Agreements* require the maintenance of hazard insurance on the property and provide that if hazard insurance is not maintained on the property, only then can the lender or servicer obtain insurance coverage to protect its interest in the property, "force place" the coverage, and charge the borrower the cost.

129.    Defendants charged Plaintiff and Class members for force placed insurance which is not permitted by the standard *Conversion Loan Agreement* and *Mortgage Agreement* because hazard insurance was consistently maintained on their properties. Defendants failed to timely refund the improperly charged force placed premiums and have failed to refund the interest, MIP, fees, penalties and other related charges that have resulted from the unlawful imposition of force placed insurance on properties that already have hazard insurance.

130.    As a direct result of WVMF's and Celink's breaches of contract, Defendants imposed and/or collected fees, costs, charges, penalties, inflated interest and MIP that have been added to the principal of Plaintiff's parents' and Class members' reverse mortgage loans, paid from the retained equity in their homes, or paid by Plaintiff and Subclass members (or their estates), thereby causing actual harm and financial injury and damage to Plaintiff and Class members.

131.    To remedy WVMF's and Celink's breaches of contract, Plaintiff and the Class seek damages, equitable remedies including an injunction and all other appropriate remedies.

## SIXTH CAUSE OF ACTION

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

### (AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE NEW YORK SUBCLASS)

132.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

133.    Plaintiff and the members of the New York Subclass are "persons" within the meaning of GBL §349(h).

134.    GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

135.    WVMF and Celink engaged in consumer-orientated, deceptive acts, policies and practices in the form of misrepresentations and material omissions during the conduct of business in New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint.

136.    That deceptive conduct involves a scheme headed by Celink, and endorsed by its principals (including WVMF), to double-bill New York homeowners for hazard insurance and to impose force placed insurance premiums and related fees, interest and MIP, on the loans of home owners who already maintain hazard insurance.  Among the deceptive practices related to that scheme are, (a) Asserting force placed insurance was required to be obtained without first obtaining proof that the borrowers or their representatives failed to maintain hazard insurance; and (b) Asserting force placed insurance was required to be obtained while ignoring oral and written notices provided by borrowers providing notice and/or proof that borrowers or their

representatives purchased and/or maintain hazard insurance.

137.    WVMF and Celink engage in further deceptive conduct by obtaining force placed insurance on borrowers' properties with hazard insurance and by refusing to timely refund force placed insurance premiums and related costs, fees, penalties, interest and MIP added to borrowers' HECM and reverse mortgage loans.

138.    WVMF and Celink make further false and deceptive statements each time they send monthly mortgage statements to borrowers misrepresenting the amount owned by HECM and reverse mortgage borrowers, which amounts are inflated by improper fees, costs, charges, penalties, interest and MIP.  Defendants engage in further deceptive conduct to the extent those false debt amounts are communicated to third-parties, including credit bureaus.

139.    WVMF's and Celink's conduct is deceptive because it is likely to mislead consumers, borrowers and the public by making them believe, falsely, that (a) Defendants have been advised that borrowers fail to maintain hazard insurance on their homes; and (b) that the monthly mortgage statements accurately represent the amount owed on reverse mortgages.

140.    WVMF's and Celink's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff's and the New York Subclass.  WVMF's and Celink's violations of GBL §349 caused Plaintiff's and New York Subclass members' injuries because absent their violations Plaintiff and New York Subclass members would not have been charged the unlawful force placed insurance premiums and related fees, costs, charges, penalties, increased interest and MIP imposed on them (including their estates) and/or their reverse mortgages.

141.    In addition to their pecuniary losses, Plaintiff and the New York Subclass

suffered actual harm as a direct, foreseeable and proximate result of WVMF's and Celink's, violations of GBL §349(a), including but not limited to the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiff and the New York Subclass.

142.    Plaintiff and the New York Subclass are entitled to pursue claims against WVMF and Celink for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs and attorneys' fees pursuant to GBL §349(h) to redress WVMF's and Celink's, violations of GBL §349(a).

143.    Plaintiff, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, and New York Subclass members who were sixty-five years of age or older at the time of Defendants' violations of GBL §349 are entitled to pursue additional claims and remedies pursuant to GBL §349-c to redress WVMF's and Celink's violations of GBL §349(a) perpetrated against one or more elderly persons.

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF STATE CONSUMER PROTECTION LAWS IN ADDITION TO NEW YORK

### (AGAINST DEFENDANTS ON BEHALF OF QUALIFYING CLASS MEMBERS)

144.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

145.    In addition to Defendants' violations of New York GBL §349, Plaintiff pleads claims on behalf of herself and qualifying members of the Class for the similar violations by Defendants of those state statutes that protect consumers for unfair, deceptive, misleading and/or unconscionable acts, practices and conduct, whether in the form of misrepresentations or omissions:

(a).    The Alaska Unfair Trade Practices and Consumer Protection Act, Alaska State. §§ 45.50.471 *et seq.*;

(b).    The Arizona Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, et seq.;

(c).    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-101, *et seq.*;

(d).    The California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* and/or the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;

(e).    The Colorado Consumer Protection Act, Colo. Rev. Stat. §§ 6-1-101, *et seq.*;

(f).    The Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110a, *et seq.*;

(g).    The Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, §§2511 et seq. and/or the Delaware Uniform Deceptive Trade Practices Act, Del. Code Ann. tit. 6, §2531, *et seq.*;

(h).     The District of Columbia Consumer Protection Procedures Act, D.C. Code Ann. §28-3901, *et seq.*;

(i).     The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*;

(j).     The Georgia Uniform Deceptive Trade Practices Act, Ga. Code Ann. §§ 10-1-370, *et seq.*;

(k).     The Hawaii Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. §§ 481A-1, *et seq.* and/or Hawaii Rev. Stat. §§ 480-1, *et seq.*;

(l).     The Idaho Consumer Protection Act, Idaho Code §§ 48-601, *et seq.*;

(m).     The Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Comp. Stat. Ann. §§ 505/1 *et seq.*;

(n).     The Indiana Deceptive Consumer Sales Act, Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*;

(o).     The Kansas Consumer Protection Act, Kan. Stat. Ann. §§ 50-623, *et seq.*;

(p).     The Kentucky Consumer Protection Act, Ky. Rev. Stat. §§ 367.110, *et seq*;

(q).     The Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5, §§ 205A, *et seq.*;

(r)**.**     The Maryland Consumer Protection Act, Md. Com. Law. Code Ann. §§ 13-101, *et seq.*;

(s).     The Massachusetts Regulation of Business Practice and Consumer Protection Act, Mass. Gen. Laws Ann. Ch. 93A;

(t).      The Michigan Consumer Protection Act, Mich. Comp. Laws Ann §§ 445-901, *et seq.*;

(u).      The Minnesota Prevention of Consumer Fraud Act, Minn. Stat. Ann. §§ 325F.68, *et seq.*;

(v).      The Missouri Merchandising Practices Act, Mo. Rev. Stat. §§ 407.010, *et seq.*;

(w).      The Nebraska Consumer Protection Act, Neb. Rev. Stat. §§ 59-1601, *et seq.*;

(x).      The Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903 *et seq.* and/or Nevada Rev. Stat. §41.600;

(y).      The New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann., §§ 358-A:1, *et seq.*;

(z).      The New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq.*

(aa).     The New Mexico Unfair Practices Act, N.M. Stat. Ann., §§ 57-12-1, *et seq.*;

(bb).     North Carolina, N.C. Gen. Stat. §§ 75-1.1, *et seq.*;

(cc).     North Dakota, N.D. Gen. Stat. §§ 51-15-01, *et seq.*;

(dd).     The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. §§ 1345.01, *et seq.*;

(ee).     The Oklahoma Consumer Protection Act, Okla. Stat. Ann. tit. 15, §§ 751, *et seq.*;

(ff).     The Oregon Unlawful Trade Practices Law, Or. Rev. Stat., §§ 646-605 *et seq.*;

(gg).     The Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. tit. 73, §§ 201-1, *et seq.*;

(hh).     The Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Law §§ 6-13.1-1, *et seq.*;

(ii).    The South Dakota Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws Ann. §§ 37-24-1, *et seq*.;

(jj).    The Texas Deceptive Trade Practices – Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq*.;

(kk).    The Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451, *et seq*.;

(ll)    The Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86.010, *et seq*.;

(mm)**.**    West Virginia, W.Va. Code §§ 46A-6-101, *et seq*.;

(nn).    Wisconsin, Wisc. Stat. Ann. §100.18; and

(oo).    The Wyoming Consumer Protection Act, Wyo. Stat. §40-12-101, *et seq*.

146.    Plaintiff possesses standing to plead and represent the claims of the Class for violations of the above-referenced state statutes.  *See Langan v. Johnson & Johnson Consumer Cos*., 897 F.3d. 88, 95-96 (2d. Cir. 2018).

147.    By the acts, practices, misrepresentations and/or omissions alleged herein, Defendants violated the above-referenced state consumer protection statutes by (a) Asserting force placed insurance was required to be obtained without first obtaining proof that the borrowers or their representatives failed to maintain hazard insurance; (b) Asserting force placed insurance was required to be obtained while ignoring oral and written notices provided by borrowers providing notice and/or proof that borrowers or their representatives purchased and/or maintain hazard insurance; (c) obtaining force placed insurance on borrowers' properties with hazard insurance policies in place and by refusing to timely refund force placed insurance premiums and related costs, fees, penalties, interest and MIP added to borrowers' HECM and

reverse mortgage loans; (d) sending monthly mortgage statements to borrowers misrepresenting the amount owned by HECM and reverse mortgage borrowers, which amounts are inflated by improper fees, costs, charges, penalties, interest and MIP; and (e) communicating false and inflated debt amounts to third-parties, including credit bureaus.

148.    As a direct, proximate and foreseeable result of Defendants' violations of the above-referenced state consumer protection statutes, members of the Class have suffered pecuniary and non-pecuniary injuries, including the payment or assessment of force placed insurance and related changes, penalties, fees, interest and MIP.

149.    On behalf of members of the Class, Plaintiff seeks damages and where available statutory damages, treble damages and exemplary damages, an injunction ending Defendants' unlawful conduct and other available equitable remedies including disgorgement, restitution and constructive trust, pre-and post-judgment interest and costs and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

### UNJUST ENRICHMENT

### (AGAINST DEFENDANTS ON BEHALF OF PLAINTIFF AND THE CLASS)

150.    Plaintiff restates, re-alleges and incorporates by reference the foregoing paragraphs.

151.    Pursuant to FED. R. CIV. P. 8(d), claims for unjust enrichment are pleaded in the alternative to Plaintiff's and the Classes' claims for breach of contract.

152.    Defendants have violated the common laws of unjust enrichment in all the states of the United States and the District of Columbia.

153.    Defendants have benefited from the unlawful and inequitable acts alleged in this Complaint.

154.    Plaintiff and Class members have conferred upon Defendants a traceable economic benefit resulting from the unlawful and inequitable acts alleged in this Complaint.

155.    The economic benefits derived by Defendants are a direct and proximate result of Defendants' unlawful and inequitable acts alleged in this Complaint.

156.    Defendants are not permitted to impose force placed insurance and related fees, costs principal, interest, and MIP on Class members for the reasons and based on the circumstances alleged in this Complaint.

157.    Payments to Defendants resulting from inequitable and unlawful acts rightfully and equitably belong to Plaintiff, as administrator, fiduciary and beneficiary of and for the estate of Ellis DeAngelo, and Class members.

158.    Under the common law of all states and territories within the United States, it

would be inequitable and unjust for Defendants to retain any portion of the charges, costs principal, interest and insurance premiums resulting from Defendants' inequitable and unlawful acts.

159.    Plaintiff's and Class members' unintentional conferral of profits onto Defendants were brought about by Defendants' unlawful, unfair, deceptive, misleading and inequitable methods, acts and practices alleged in this Complaint.

160.    Defendants should be compelled to provide restitution or to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds received from them.

161.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to Plaintiff and Class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment against Defendants as follows:

A.    An order certifying this case as a class action under FED. R. CIV. P. 23, and appointing Plaintiff and her counsel to represent the Classes;

B.    An order declaring that WVMF's and Celink's acts and practices constitute violations of RESPA and RESPA Regulation X.

C.    An order declaring that WVMF's and Celink's acts and practices constitute violations of New York RPL §280-b.

D.    An order declaring that WVMF's and Celink's practices constitute breaches of contract;

E.    An order declaring that WVMF's and Celink's acts and practices constitute violations of New York GBL §349 and other state consumer protection statutes;

F.    An order declaring that WVMF's and Celink's acts and practices constitute unjust enrichment;

G.    A permanent injunction;

H.    An order requiring restitution and disgorgement and the creation of a constructive trust for the benefit of Plaintiff and the Classes;

I.    An order requiring WVMF and Celink to refund, credit and/or remove all unlawfully-added fees, costs, charges, penalties, interest and mortgage insurance from Plaintiff's parents' and Class members' HECM and reverse mortgage loans.

J.    Pre-judgment and post-judgment interest to the fullest extent permitted by law;

K.    Attorneys' fees and costs required to reasonably investigate and prosecute this action; and

L.    All such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims to the extent authorized by law.

DATED:  November 5, 2020

**TUSA P.C.**

/s/ Joseph S. Tusa_____
Joseph S. Tusa
joseph.tusapc@gmail.com
P.O. Box 566
55000 Main Road, 2nd Floor
Southold, NY  11971
Tel. (631) 407-5100

**GISKAN SOLOTAROFF & ANDERSON LLP**
Oren Giskan
ogiskan@gslawny.com
Catherine E. Anderson
canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315

***Attorneys for Plaintiff***
***and Proposed Class Counsel***