UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIANNE RENOIS AS
ADMINISTRATOR, FIDUCIARY AND
BENEFICIARY OF AND FOR THE ESTATE
OF ELLIS DEANGELO, on behalf of herself
and all others similarly situated,

                         Plaintiff,

-against-

WVMF FUNDING, LLC, and COMPU-LINK
CORPORATION D/B/A CELINK,

                         Defendants.

20-CV-9281-LTS

---

## <u>Memorandum Opinion and Order</u>

       Marianne Renois, "as administrator, fiduciary and beneficiary of and for the

Estate of Ellis DeAngelo" ("Plaintiff"), brings this proposed class action (the "Action") against

WVMF Funding, LLC ("WVMF") and Compu-Link Corporation ("Celink," and, with WVMF,

the "Defendants"), asserting claims for violations of the Real Estate Settlement Procedures Act

("RESPA"), 12 U.S.C. § 2605(k) and (l), and its implementing regulation, RESPA Regulation X,

12 C.F.R. § 1024.37 ("Count One"), and of New York Real Property Law ("NY RPL") § 280-b

("Count Two"), for breach of contract "by reason of" violations of federal law ("Count Three"),

state law ("Count Four"), and of the contract's express terms ("Count Five"), for violations of

New York General Business Law ("GBL") § 349 ("Count Six"), for violation of rights of out-of-

state, to-be-named plaintiffs under the consumer protection laws of other states ("Count Seven"),

and for unjust enrichment ("Count Eight").  (Docket entry no. 5 (the "Complaint").)  The Court

has jurisdiction of this action pursuant to 28 U.S.C. section 1331 and RESPA 12 U.S.C. sections

2605(f) and 2614.  The Court has supplemental jurisdiction of Plaintiff's state law claims

pursuant to 28 U.S.C. section 1367.  Defendants move pursuant to Federal Rule of Civil

Procedure 12(b)(1) to dismiss the complaint on grounds of standing and abstention (docket entry

no. 25 (the "Jurisdictional Motion")), to dismiss on grounds of improper venue pursuant to 28

U.S.C. section 1406(a), or, in the alternative, to transfer the Action pursuant to 28 U.S.C. section

1404(a) or 1406(a) to the Eastern District of New York (docket entry no. 33 (the "Venue

Motion")), and to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim upon which relief may be granted (docket entry no. 26 (the "12(b)(6)

Motion")).

        The Court has reviewed and considered thoroughly all of the parties' submissions.

For the following reasons, the Jurisdictional Motion is granted in part and denied in part, the

Venue Motion is denied in its entirety, and the 12(b)(6) motion is granted as to Counts Two,

Three, Four, and Eight.  As to Count Two, Plaintiff is granted leave to amend her complaint.  As

to Counts One, Five, Six, and Seven, the 12(b)(6) motion is denied.

BACKGROUND

        The following factual allegations are derived from the allegations of the

Complaint and from documents incorporated therein, unless otherwise stated.  The Court

assumes these allegations to be true for the purpose of this motion.

        In 2010, Jean and Ellis DeAngelo obtained a Home Equity Conversion Mortgage

(HECM (the "Loan")) from Mortgage Enterprises, Ltd. and Financial Freedom.  (Complaint ¶ 9.)

An HECM is a "reverse mortgage" insured by the United States federal government that enables

the borrower to withdraw a portion of the equity from his or her home.  (Id. ¶ 13.)  Attached to

the Complaint are a copy of a mortgage (Complaint, Ex. A (the "Mortgage")) and a Closed-End

Fixed Rate Home Equity Conversion Loan Agreement (Complaint, Ex. B (the "HECM

Agreement") (together with the Mortgage, the "Loan Agreement")).  As is the case with most reverse mortgage loans, the Loan was secured by Jean and Ellis DeAngelo's home (the "Property"), and the lender was permitted to require immediate payment of the Loan balance upon the deaths of the borrowers.  (Mortgage ¶ 9.)  The Loan was subsequently sold and acquired by WVMF, which retained Celink as the sub-servicer of the Loan.  (Complaint ¶ 9.)  In 2017, Ellis DeAngelo, who had been predeceased by his wife, passed away.  (12(b)(6) Motion at 1.)  Plaintiff was subsequently appointed administrator of her father's estate (the "Estate").  (Complaint ¶ 1.)  She is also a beneficiary.  (Id.)  The home, with its encumbrances, including the Loan, was included in the Estate.  (Docket entry no. 40 at 2.)

Under the terms of the Loan Agreement, the "Borrower" was required to "pay all property charges," including "hazard insurance premiums . . . in a timely manner, and . . . provide evidence of payment to Lender."  (Mortgage ¶ 2.)  To fulfill this obligation, the Borrower was required to purchase insurance "against any hazards, casualties, and contingencies, including fire."  (Id. ¶ 3.)  The Loan Agreement provided that, if the Borrower failed to maintain hazard insurance on the Property, "Lender may do and pay whatever is necessary to protect the value of the Property . . . including payment of taxes, hazard insurance, and other items mentioned in Paragraph 2."  (Id. ¶ 5; HECM Loan ¶ 2.10.5.)  In the event of a "pattern of missed payments," the Lender was permitted to "establish procedures to pay the property charges funds as if Borrower elected to have the Lender pay the property charges" and should make such payments "from a line of credit [to the Borrower] . . . to the extent possible."  (HECM Loan ¶ 2.16.)

On July 27, 2018, Celink sent a letter, addressed to "The Estate of Ellis Angelo", to Plaintiff, stating that:

> Our records show that your Hazard/Fire/Real Property insurance has expired, and we do not have evidence that you have obtained new

> coverage. Because Hazard/Fire/Real Property insurance is required on your property, we plan to buy insurance for your property. You must pay us for any period during which the insurance we buy is in effect, but you do not have insurance.
>
> Please immediately provide us (in writing) with your insurance policy number, and the name, mailing address and phone number of your insurance company or insurance agent.

(Complaint ¶ 17; docket entry no. 56 (the "Gray Decl."), Ex. G.)  On August 28, 2018, Celink sent Plaintiff a second notice requesting written proof of hazard insurance and estimating that the insurance Celink planned to purchase on the Estate's behalf would cost $2,644.69 annually. (Complaint ¶ 17; docket entry no. 40-1 (the "Tusa Decl."), Ex. D.)  On October 1, 2018, Celink sent a third letter, stating that it had purchased hazard insurance for the Property, and that "[t]he cost of any insurance we purchase will be added to your loan balance."  (Complaint ¶ 18; Gray Decl., Ex. H.)  This policy (the "First Policy") had an annual premium of $2,625.00, which was added to the balance of the Loan.  (Complaint ¶ 19.)  In 2019, Celink purchased a second force-placed insurance policy (the "Second Policy" (together with the First Policy, the "Force-Placed Policies")), for which it added a charge of $3,000 to the balance of the Loan.  (Id. ¶ 20.) Additional charges for "'attorney's fees / costs,' 'property inspection' fees, and increased interest and mortgage insurance charges" (together, the "Additional Charges") were also added to the balance of the Loan.  (Id. ¶ 82.)  Plaintiff states that, "upon information and belief, [the Additional Charges] are related to Defendants' unlawful imposition of force placed insurance." (Id.)  As the cost of the Force-Placed Policies' premiums (the "Premiums") and the Additional Charges had been added to the Loan's principal, "WVMF and Celink also charged, and continue[] to charge, interest on [the Premiums] and [the Additional Charges] at annual rate of 5.39% and Mortgage Insurance Premiums ('MIP') at an annual rate of .5%."  (Id. ¶ 18.)

During this two-year period, Plaintiff "provided oral and written notice to Celink . . . on multiple occasions, including on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020, and June 8, 2020, that she maintained hazard insurance on [the Property]." (Id. ¶ 17.)  On July 30, 2020, Celink notified Plaintiff that it had received confirmation that hazard insurance had been in place for entirety of the period for which it had purchased insurance for the home.  (Id. ¶ 21.)  Celink "admitted Defendants' mistake and refunded *only* the [Premiums] added by Celink" to the balance of the Loan (id. ¶ 80 (emphasis in original)), but this credit was applied to the loan balance "long after the 15-day refund deadline imposed by RESPA and New York law."  (Id.)  However, "WVMF and Celink still have not refunded or credited back the charges, interest, and MIP related to its imposition of force placed insurance" on Plaintiff's loan.  (Id.)

On February 14, 2019, WVMF, through its legal counsel, filed a complaint to foreclose on the Property in Nassau County Supreme Court (the "State Foreclosure Action"). (Grey Decl., Ex. M.)  On November 13, 2019, WVMF moved for an entry of default judgment (Id., Ex. N.)  On March 2, 2020, Nassau County Supreme Court entered a default judgment and referred that case to a referee to calculate a final foreclosure judgment.[1]  (Id., Ex. O.)

---

[1]     In the motion to dismiss context, "courts routinely take judicial notice of documents filed in other courts, . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir. 1991).

<u>D</u>ISCUSSION

<u>Jurisdictional Motion - Standing and Abstention</u>

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject

matter jurisdiction, and also moves to dismiss on other grounds . . . the Court must consider the

Rule 12(b)(1) motion first." <u>Bobrowsky v. Yonkers Courthouse</u>, 777 F. Supp. 2d 692, 703

(S.D.N.Y. 2011) (citing <u>Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n</u>, 896 F.2d 674, 678 (2d Cir.

1990)). "A motion to abstain is considered a motion to dismiss for lack of subject matter

jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)." <u>Krondes v. Nationstar</u>

<u>Mortg., LLC</u>, No. 17-CV-4974-WHP, 2018 WL 2943774, at *2 (S.D.N.Y. June 12, 2018)

(quotation, citation, and modifications omitted). "In resolving a motion to dismiss under Rule

12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as

true, and draw all reasonable inferences in favor of the party asserting jurisdiction." <u>Tandon v.</u>

<u>Captain's Cove Marina of Bridgeport, Inc.</u>, 752 F.3d 239, 243 (2d Cir. 2014).

<u>Article III Standing</u>

The requirement of standing ensures that the power of federal courts remains

limited "to the resolution of Cases and Controversies," as required under Article III of the

Constitution. <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 423 (2021). "[W]hether the plaintiff

has made out a 'case or controversy' between himself and the defendant . . . is the threshold

question in every federal case, determining the power of the court to entertain the suit." <u>Mahon</u>

<u>v. Ticor Title Ins. Co.</u>, 683 F.3d 59, 62 (2d Cir. 2012) (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 498

(1975)). To satisfy the "irreducible constitutional minimum" of standing, a plaintiff must show:

(i) that the plaintiff suffered an injury in fact that is concrete, particularized, and actual or

imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief.  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992).  "Each element of standing must be supported with the manner and degree of evidence required at the successive stages of the litigation."  John v. Whole Foods Mkt. Grp., Inc., 858 F.3d 732, 736 (2d Cir. 2017) (internal quotations and citation omitted).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim."  Lujan, 504 U.S. at 561.

Here, the Court considers Defendants' Rule 12(b)(1) challenge to standing at the pleading stage.  A Rule 12(b)(1) motion challenging subject matter jurisdiction may be "facial" or "fact-based."  See, e.g., Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016).  Defendants mount a facial challenge.  (See Jurisdictional Motion at 6 ("Defendants make a facial challenge to the Court's subject matter jurisdiction.").)  As the Second Circuit explained:

> When the Rule 12(b)(1) motion is facial, i.e., based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden.  The task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'

Carter, 822 F.3d at 56.  A facial challenge is evaluated under the same standard as a Rule 12(b)(6) motion, "accepting as true all material factual allegations of the complaint, and drawing all reasonable inferences in favor of the plaintiff."  Id. at 57 (cleaned up).

Defendants argue that Plaintiff has no standing to bring suit on behalf of the Estate, either in her capacity as its administrator or as its sole beneficiary, because the causes of action arose after the death of the decedent.  (See Jurisdictional Motion at 8 ("No live controversy exists here because none of the claims asserted had accrued before [the decent]'s

death.").)  Defendants argue that any contractual or statutory rights possessed by decedent while alive were extinguished at his death (see Jurisdictional Motion at 8 ("[A]fter Mr. DeAngelo died, he no longer possessed the substantive contract and statutory rights he had when alive")), and the Estate therefore "could not suffer the invasion of a legally protected right."  Ibid.  On that basis, Defendants claim that "[n]either the Decedent nor his Estate possess any claim relating to the Lender Policy, and thus there is no claim that the administrator can bring on the Decedent's behalf."  Ibid.

As an initial matter, the Court finds unpersuasive Defendants' broad contention that the rights created by a contract disappear at the death of the contracting party.  In Culwick v. Wood, No. 15-CV-05868-ENV-SMG, 2019 WL 9662658, (E.D.N.Y. June 4, 2019), for example, the Court addressed this issue when the administratrix of an estate sought relief for an alleged breach of contract that occurred following the decedent's death:

> As a contracting party, the decedent's legal rights were violated if [defendant] breached that contract . . . [b]y way of illustration, if the decedent were still alive, he would unquestionably be able to enforce any contract with [the defendant].  The Estate simply stands in the decedent's shoes and derivatively possesses the same right of enforcement . . . contract rights are substantive, and their invasion creates standing to sue, as courts have recognized for generations.  Consequently, to the extent plaintiff pursues contract claims, plaintiff has standing as administratrix.

Id. at *4 (internal citation omitted); see also Graham v. Barriger, 699 F. Supp. 2d 612, 620 (S.D.N.Y. Nov. 17, 2009) (explaining that because "[defendant] McKean is now deceased," "the Estate of Andrew McKean stands in his shoes").

To wield the decedent's right of enforcement, derivatively possessed by an estate, New York relies upon the estate's administrator.  Under New York law, "it is elementary that the executors or administrators represent the legatees, creditors and distributees in the property of the estate; [and] that their duty is to recover the property of the estate."  Jackson v. Kessner, 206

A.D.2d 123, 126 (App. Div. 1st Dep't 1994) (quoting McQuaide v. Perot, 223 N.Y. 75, 79

(1918)); see also Hallingby v. Hallingby, 693 F. Supp. 2d 360, 364 n.4 (S.D.N.Y. 2010) ("The

Court finds that as to the breach of contract claim based upon the [agreement underlying the

claim] – a contract between the decedent and [defendant] – [plaintiff] properly sues [defendant]

in her capacity as executrix.").  Here, Plaintiff identifies herself as the duly appointed

administrator of the Estate and, to the extent she brings suit in that capacity concerning liabilities

asserted against property owned by the decedent, she has Article III standing to do so.

The Court agrees with Defendants, however, that Plaintiff lacks standing to sue in

her capacity as a beneficiary of the estate.  As executors and administrators bear responsibility

for representing the distributees and beneficiaries of an estate, Jackson, 206 A.D.2d at 126, "the

legatees and next of kin are concluded by their determination in respect to actions therefor and

have no independent cause of action, either in their own right or the right of the estate."  Id.

"The legatees and beneficiaries [of an estate] have no independent cause of action either in their

own right or in the right of the estate to recover estate property."  Wierdsma v. Markwood Corp.,

53 A.D.2d 581, 582 (App. Div. 1st Dep't 1976); see also Lucas v. Tiernan, No. 07-CV-2011-

NRB, 2006 WL 4808614, at *1 (S.D.N.Y. Sept. 27, 2006) ("Beneficiaries are recipients of the

largesse of the decedent, not fiduciaries with responsibilities to the estate." (citation omitted)).

This remains true even if the administrator and beneficiary are the same person.  "[A]n overlap

between the executor and the sole beneficiary does not change the legal analysis."  Lucas, 2006

WL 4808614, at *2 (citing Jackson, 206 A.D.2d at 127 ("It is of no consequence that the plaintiff

is the sole beneficiary of the estate . . . the distinction between an individual's status as fiduciary

of an estate and beneficiary cannot be disregarded." (internal citation omitted))).  Accordingly,

solely to the extent that Defendants assert Plaintiff lacks standing as the Estate's beneficiary,

Defendants' motion is granted, and Plaintiff's claims are dismissed to the extent they are brought in her capacity as a beneficiary of the Estate.

<u>Colorado River Abstention</u>

Defendants assert that the Court should abstain from adjudicating this action, in light of the pendency of the state court foreclosure proceeding concerning the underlying property.  In general, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." <u>Colo. River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 817 (1976) (citation omitted).  "Abstention from the exercise of federal jurisdiction is the exception, not the rule." <u>Id.</u> at 813.  However, the Supreme Court has delineated "extraordinary and narrow exception[s]" in which abstention is appropriate, on the basis that, in these "exceptional circumstances . . . the order to the parties to repair to the state court would clearly serve an important countervailing interest." <u>Id.</u> (quotation omitted).

A court considering abstention under <u>Colorado River</u> must first determine whether the concurrent proceedings are "parallel."  "The principles of <u>Colorado River</u> are to be applied only in situations involving the contemporaneous exercise of concurrent jurisdictions . . . [t]herefore, a finding that the concurrent proceedings are parallel is a necessary prerequisite to abstention under <u>Colorado River</u>." <u>Dittmer v. Cnty. of Suffolk</u>, 146 F.3d 113, 118 (2d Cir. 1998) (cleaned up).  If the Court finds that the proceedings are parallel, it must then consider six factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." <u>Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.</u>, 673 F.3d 84, 100 (2d Cir. 2012) (citation and quotation marks omitted).  These factors are:

> (1) Whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether the proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Id. at 100-101.

For abstention purposes, "[s]uits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." Sitgraves v. Fed. Home Loan Mortg. Corp., 265 F. Supp. 3d 411, 413 (S.D.N.Y. 2017) (quoting Niagara Mohawk, 673 F.3d at 100). Parallelism can be found "when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 22 (2d Cir. 1997). "Perfect symmetry of parties and issues is not required. Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." Abe v. N.Y. Univ., No. 14-CV-9323-RJS, 2016 WL 1275661, at *6 (S.D.N.Y. Mar. 30, 2016) (citation omitted). A decision by a district court to dismiss an action pursuant to Colorado River therefore "presumably concludes that the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties. If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 28 (1983).

Here, although the federal and state actions are based on the same set of circumstances, abstention is not warranted because the cases are not parallel. As an initial, though not dispositive, matter, the federal action involves an additional party, Celink, whose alleged conduct underlies all of Plaintiff's claims. Second, though the two actions clearly

overlap in that they both relate to the Loan, there is no indication or allegation that the State Foreclosure Action considered any of the issues raised here – namely, whether Celink's actions in sub-servicing the loan violated various provisions of state and federal law.  See Maropakis v. Bank of N.Y. Mellon Tr. Co., No. CV-13-4844-ERK-VVP, 2015 WL 13742419, at *12 (E.D.N.Y. May 4, 2015) (declining to abstain where filings "in the state court action demonstrate[] that [plaintiff] has contested the foreclosure action on grounds completely different from those raised here"); see also DDR Const. Servs., Inc. v. Siemens Indus., Inc., 770 F. Supp. 2d 627, 645 (S.D.N.Y. 2011) ("When the nature of the claims in question differs, cases are not parallel despite the fact that both actions arise out of a similar set of circumstances." (citation and internal quotations omitted)).

Finally, even if the issues were parallel, Plaintiff is not seeking to litigate contemporaneously in federal court.  On the record before the Court, an order of reference and default judgment was issued in the State Foreclosure Action over eight months prior to the commencement of the instant case.[2]  (Gray Decl., Ex. O.)  In these circumstances, "the question is not whether there is a likelihood that the state court litigation 'will' dispose of the claims before this court; the question is whether it already has."  Almazon v. JPMorgan Chase Bank, Nat'l Ass'n, No. 19-CV-4871-VEC, 2020 WL 1151313, at *8 (S.D.N.Y. Mar. 9, 2020) (internal citation omitted).  "That question is properly analyzed under res judicata and collateral estoppel rather than as a basis for Colorado River abstention."  Id.; see also Bongiovanni v. PennyMac Corp., No. 19-CV-3260-EK-VMS, 2021 WL 1193043, at *4 n.4 (E.D.N.Y. Mar. 30, 2021)

---

[2]    "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 157 (2d Cir. 2006).

(finding <u>Colorado River</u> inapplicable, on the grounds that plaintiff was not contemporaneously litigating issues in both fora, where the state court had entered judgment as plaintiff's liability on a mortgage loan but had not yet entered a final judgment of foreclosure and sale).  Accordingly, the Court denies the Jurisdictional Motion insofar as it seeks abstention under <u>Colorado River</u>.

<u>Collateral Estoppel and Res Judicata</u>

Defendants argue that Plaintiff's claims are "barred by the principles of res judicata and/or claim preclusion" because "Plaintiff could have appeared in the state court action . . . and challenged the disputed fees and costs . . . because they directly concern the parties' rights and obligations under the mortgage agreement."  (12(b)(6) Motion at 14.)  Defendants' arguments are unavailing.

As to collateral estoppel, "the preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the states where the prior action occurred."  <u>Wight v. BankAmerica Corp.</u>, 219 F.3d 79, 87-88 (2d Cir. 2000) (citation and quotation marks omitted).  "Under New York law, collateral estoppel forecloses only those issues that have 'actually been litigated and determined in a prior action,' and '[a]n issue is not actually litigated if there has been a default.'"  <u>Gianatasio v. D'Agostino</u>, 862 F. Supp. 2d 343, 350 (S.D.N.Y. 2012) (quoting <u>Yoon v. Fordham Univ. Fac. & Admin. Ret. Plan</u>, 263 F.3d 196, 202 n.27 (2d Cir. 2001)).  "The party asserting issue preclusion bears the burden of showing that the identical issue was previously decided."  <u>Spoleto Corp. v. Ethiopian Airlines Grp.</u>, No. 21-CV-5407-PAE, 2022 WL 329265, at *7 (S.D.N.Y. Feb. 3, 2022) (citation omitted).  Here, because the State Foreclosure Action resulted in a default judgment, the issues were not actually litigated for purposes of collateral estoppel.

In considering the res judicata effect of the State Foreclosure Action, the Court must again apply New York law.  See Dolan v. Select Portfolio Servicing, No. 13-CV-1552-PKC, 2014 WL 4662247 (E.D.N.Y. Sept. 18, 2014) ("The Court, in considering the res judicata effect of a New York state court judgment, must apply the New York law of res judicata." (citing Krember v. Chem. Constr. Corp., 456 U.S. 461, 466 (1982))).  Res judicata "bars later litigation if an earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action."  EDP Med. Comput. Sys., Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (citation, internal quotation marks, and alteration omitted).

"New York is a permissive counterclaim jurisdiction."  Paramount Pictures Corp. v. Allianz Risk Transfer AG, 36 N.Y.S.3d 11, 14 (App. Div. 1st Dep't 2016), aff'd, 31 N.Y.3d 64 (2018).  "New York's permissive counterclaim rule preserves the right of a party to bring a claim that it could have brought as a counterclaim in a prior action, as long as doing so would not 'impair the rights or interests established in the first action.'"  Guido v. Wells Fargo Bank, N.A., No. 16-CV-1568 (VSB), 2017 WL 5515859, at *3 (S.D.N.Y. Mar. 21, 2017), aff'd, 699 F. App'x 54 (2d Cir. 2017) (quoting Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of N.Y.C., 68 N.Y.2d 456, 462 n.2 (1986)).  "[T]herefore, res judicata does not bar claims that could have been raised by the defendant as counterclaims in a previous action but were not actually raised."  Cameron v. LR Credit 22, LLC, 998 F. Supp. 2d 293, 298 (S.D.N.Y. 2014) (citation omitted); see also RA Glob. Servs., Inc. v. Avicenna Overseas Corp., 843 F. Supp. 2d 386, 390 (S.D.N.Y. 2012) ("The fact that a plaintiff may have asserted the subject matter of his present claim as a defense to a former action does not foreclose the maintenance of his present action on the ground of res judicata." (citing Lukowsky v. Shalit, 110

A.D.2d 563 (App. Div. 1st Dep't 1985))).  "To hold otherwise would have the effect of rendering New York a compulsory counterclaim jurisdiction, because any counterclaims not asserted would be barred in subsequent actions."  Dolan, 2014 WL 4662247, at *34; but see Almazon, 2020 WL 1151313, at *11 (declining to follow S.D.N.Y. cases that read res judicata "narrowly" on the basis of New York's permissive counterclaim regime, on the grounds that the Second Circuit has construed New York's res judicata law to apply to all claims that 'could have been raised' in a prior proceeding).

Citing New York's permissive counterclaim regime, Plaintiff contends that res judicata does not bar her claims here.  (Docket entry no. 40 at 7.)  In their reply, Defendants do not address this argument, or any legal authority cited by Plaintiffs.  (See docket entry no. 58.)  Because Plaintiff does not appear to have been obliged to raise her claims here in the state court litigation, and because there is no evidence, in any event, that a final judgment has been entered in the foreclosure action, Defendant's motion is denied insofar as it seeks dismissal of this action as precluded by the state court foreclosure action.[3]

Venue Motion

Plaintiff argues that Defendants waived improper venue as a defense by failing to raise it in the Jurisdictional Motion or 12(b)(6) Motion, both of which were filed more than fourteen days prior to the Venue Motion.  The Court agrees.

Although venue is normally governed by U.S.C. § 1391, RESPA contains its own venue provision, which requires that any action arising under Section 2605, 2607, or 2608 be

---

[3]     The Court notes that Defendants abandoned their arguments for abstention under the Rooker-Feldman doctrine in their reply.  (Docket entry no. 58.)

brought in any "district in which the property involved is located, or where the violation is alleged to have occurred."  12 U.S.C.A. § 2614 (Westlaw through P.L. 117-145).  "A defendant nevertheless may waive improper venue as a defense because venue is not jurisdictional." Johnson v. Bryson, 851 F. Supp. 2d 688, 704 (S.D.N.Y. 2012) (citing Neirbo v. Bethlehem Shipbuilding Corp., 308 U.S. 165, 168 (1939)).

Under Rule 12 of the Federal Rules of Civil Procedure, a party waives venue as a defense by omitting it from its a motion made under Rule 12(b).  See Fed. R. Civ. P. Rule 12(g-h).  Pursuant to this Rule, courts in this circuit have consistently deemed venue waived when a defendant fails to raise that objection in its first Rule 12 motion.  See, e.g., Index Fund, Inc. v. Hagopian, 107 F.R.D. 95, 101 (S.D.N.Y. 1985) ("It is well established that under [Rule 12], a defendant who wishes to raise [venue] must do so in his first defensive move, be it a Rule 12 motion or a responsive pleading." (citation and quotation marks omitted)); see also Johnson, 851 F. Supp. 2d at 704 ("Pursuant to Rule 12(h)(1) of the Federal Rules of Civil Procedure, a defendant waives any challenge to venue if it fails to raise that objection in a pre-answer motion or in its first responsive pleading." (citing Tri-State Emp. Servs. Inc. v. Mountbatten Sur. Co., 295 F.3d 256, 261 n.2 (2d Cir. 2002))); Del Med. Imaging Corp. v. CR Tech USA, Inc., No. 08-CV-8556-LAP-DFE, 2010 WL 1487994, at *9 (S.D.N.Y. Apr. 13, 2010) (noting that courts in the Second Circuit have stated "that a defendant must raise a Rule 12 defense in his first defensive move . . . in reference to a defendant's filing of an answer or pre-answer motion to dismiss without raising the appropriate Rule 12(b) objection" (internal quotation marks and citation omitted)).

Here, Defendants filed two Rule 12(b) motions without asserting venue as a defense.  Defendants argue that Magistrate Judge Freeman ordered Defendants to proceed with

the Venue Motion in a scheduling order issued following an initial pretrial conference on January 12, 2021.  (Docket entry no. 28 (the "Scheduling Order") (stating that "given the representation of Defendants' counsel that defendants intend, by January 15, 2020, to file a motion to transfer this action to the Eastern District of New York, Defendants are directed to proceed with that motion . . .").)  The scheduling order does not override Rule 12.  Because the Defendants failed to raise venue in their first motion filed pursuant to Rule 12(b), they have waived any objection to venue, and the Venue Motion is therefore denied in its entirety.

Rule 12(b)(6) Motion

Rule 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content plead that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  When considering a motion brought under Rule 12(b)(6), the court must accept as true all nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor.  See, e.g., Kaplan v. Lebanese Canadian Bank, SAL, 999 F.3d 842, 854 (2d Cir. 2021).

RESPA Violation (Count One)

Plaintiff asserts a RESPA claim based on Defendants' imposition of the Force-Placed Policies upon the Property in 2018 and 2019, despite having received "written notice and proof" that Plaintiff purchased and maintained hazard insurance on the Property on multiple

occasions.  (Complaint ¶ 79.)  Though Celink eventually terminated the insurance and refunded

the Premiums added to the balance of the Loan, Plaintiff asserts that Celink failed to do so within

15 days of receiving proof of insurance, as required by 12 U.S.C. § 2605(l)(3), (Complaint ¶¶ 80,

81), and failed to refund either the Additional Charges or the interest and MIP charges that

accrued on the Premiums and Additional Charges.  (Id.)  Defendants proffer that the challenged

interest and additional charges were properly incurred in connection with the foreclosure action

rather than as a result of the Forced-Placed Policy charges, but such factual contentions are

extraneous to the complaint and thus cannot be considered in connection with this motion

practice.

Under RESPA, "a servicer of a federally related mortgage shall not obtain force-

placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to

comply with the loan contract's requirements to maintain property insurance."  12 U.S.C.A.

§ 2605(k)(1)(A) (Westlaw through P.L. 117-159).  Force-placed insurance is defined by RESPA

as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the

borrower has failed to maintain or renew hazard insurance on such property as required of the

borrower under the terms of the mortgage."  12 U.S.C.A. § 2605(k)(2) (Westlaw through P.L.

117-159).  A servicer may not claim a reasonable basis for believing force-placed insurance is

necessary if a borrower has made a sufficient demonstration of coverage, defined as "any

reasonable form of written confirmation from a borrower of existing insurance coverage, which

shall include the existing policy number along with the identity of, and contact information for,

the insurance company or agent, or as otherwise required by the Bureau of Consumer Financial

Protection."  12 U.S.C.A. § 2605(l)(2) (Westlaw through P.L. 117-159).  If a servicer has force-

placed insurance on a property and receives confirmation of existing insurance coverage:

> Within 15 days of receipt . . . of a borrower's existing coverage . . . the servicer shall terminate the force-placed insurance; and refund to the consumer all force-placed insurance premiums paid by the borrower during any period during which the borrower's insurance coverage and the force-placed insurance coverage were each in effect, and any related fees charged to the consumer's account with respect to the force-placed insurance during such period.

12 U.S.C.A. § 2605(l)(3).  RESPA provides "borrowers" with a private right of action, permitting recovery from a party that fails to comply with the statute in an amount equal to the sum of "any actual damages to the borrower as a result of the failure; and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements section, in an amount not to exceed $2,000."  12 U.S.C.A. § 2605(f)(1) (Westlaw through P.L. 117-159).[4]

Here, Plaintiff asserts that she repeatedly provided Defendants with written notice and proof, beginning on March 8, 2018, that she maintained hazard insurance on the Property.[5] On these facts, Plaintiff's allegation that Defendants failed to terminate the Force-Placed Insurance within 15 days of receipt of this notice pleads a RESPA violation, as does, at a minimum, Plaintiff's pleading that Defendants have not refunded the additional interest or MIP that accrued as a result of the increased Loan balance.  Defendants' alleged failure to refund

---

[4]    Defendants argue that "most courts have held that no private right of action exists for alleged violations of 12 C.F.R. § 1024.37." (See docket entry no. 26 ("Def. 12(b)(6) Mem.") at 7.)  The Court's own review of relevant case law has found a split among courts on the issue.  See, e.g., Sutton v. CitiMortgage, Inc., 228 F. Supp. 3d 254, 271 (S.D.N.Y. 2017) (discussing split).  Because Plaintiff has not pled any violation of 12 C.F.R. § 1024.37 as a cause of action separate from the alleged RESPA violation, the Court declines to decide the issue here.

[5]    The Court notes that, in other sections of the Complaint, Plaintiff describes the notice provided to Defendants as "oral and written notice."  (Complaint ¶¶ 3, 17, 28, 33, 34, 35, 36.)  At this early stage in the litigation, however, and drawing all reasonable inferences in Plaintiff's favor, the Court finds Plaintiff's proffer that she provided "written notice and proof" to Defendants (Complaint ¶ 79) as sufficient to meet the requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8.

these charges also satisfies the requirement that, to state a claim under RESPA, Plaintiff plead the existence of actual damages caused by the alleged violation.

Defendants argue that Plaintiff cannot state a claim for a RESPA violation because RESPA's provision applies only to "borrowers," and "neither Plaintiff nor the Estate is a borrower."  (12(b)(6) Motion at 7.)  Although RESPA does not define "borrower," courts have consistently held the term, under RESPA, to mean "someone who is obligated under a federally related mortgage loan."  Garrasi v. Selene Fin., LP, 407 F. Supp. 3d 110, 118 (N.D.N.Y. 2019) (citing cases from the 5th, 6th, and 11th Circuits).  Ellis DeAngelo was the Loan's "borrower" for purposes of asserting a RESPA claim.  As an "[e]state simply stands in the decedent's shoes and derivatively possesses the same right of enforcement," Culwick, 2019 WL 9662658, at *4, the Estate here is properly considered the "borrower" for purposes of bringing a RESPA claim, and Plaintiff, as administrator of the Estate, is the proper party to bring a RESPA claim on the Estate's behalf.

For these reasons, Defendants' motion is denied insofar as it seeks dismissal of Plaintiff's RESPA claim.

### NY RPL § 280-b (Count Two)

NY RPL § 280-b is a statute with an effective date of March 5, 2020, "that provides a variety of consumer protection and disclosure requirements for reverse mortgages." Blumenthal, McKinney Practice Commentary, NY RPL § 280-b (2020).  Plaintiff pursues claims under Subsections 4(b) and 5 of the statute.  Subsection 4(b) mandates that, "for all borrowers whose . . . payments stemming from any other property obligation or obligations . . . are administered by the authorized lender, and where these payments are derived from the proceeds

of the mortgage," the lender must place on the borrower's periodic account statements the following notice:

> YOUR TAXES AND INSURANCE ARE CURRENTLY BEING PAID BY THE PROCEEDS OF THIS MORTGAGE.  THE FUNDS THAT HAVE BEEN SET ASIDE ARE EXPECTED TO BE EXHAUSTED AFTER THE TAX AND INSURANCE PAYMENTS OF (SPECIFY EXPECTED MONTH AND YEAR).  IF THE PROCEEDS OF THIS MORTGAGE CANNOT PAY THE TAXES AND INSURANCE, YOU MUST PAY THESE OBLIGATIONS OR YOUR HOME MAY BE LOST TO FORECLOSURE.  PLEASE NOTE THAT AS TAX AND INSURANCE AMOUNTS CAN VARY YOU SHOULD CONTINUE TO REVIEW THIS NOTICE FOR CHANGES.

NY RPL § 280-b(4)(b).  Subsection 5 prohibits:

> an advance payment for any obligation arising for mortgaged real property . . . in the event a mortgagor defaults upon the payment of a mortgage insurance premium, homeowners' insurance premium or real property tax related to the mortgaged property, the authorized lender may only pay those premiums and/or taxes which are in arrears.

NY RPL § 280-b(5).  The Court has found no cases, in federal or state court, construing its provisions.

Regarding Subsection 5, Defendants argue that the statute's language limiting payment to "those premiums and/or taxes which are in arrears" implies that the provision "deal[s] with the situation in which a borrower [purchases] his or her own insurance policy and is generally making the payments on that policy," but then fails to make payments required under the policy, leading the lender to make those payments on the borrower's behalf.  (See Def. 12(b)(6) Mem. at 9.)  In its opposition, Plaintiff appears to concede this point.  (See docket entry no. 41 ("12(b)(6) Opp.") at 10 ("Admittedly, the hazard insurance on Plaintiff's house was not in arrears.").)  Here, Defendants are not alleged to have made payments on a policy previously purchased by Plaintiff, but to have unnecessarily purchased a new insurance policy and force-

placed it on the Property.  The allegations in the Complaint therefore do not appear to indicate any violation of Subsection 5.

Further, it is unclear that Section 280-b, which became effective on March 5, 2020, was in effect at the time at which the force-placed insurance was imposed.  The Complaint alleges that the First Policy, obtained in 2018, and the Second Policy, obtained in 2019, both had annual premiums.  (Complaint ¶¶ 19, 20.)  If Celink's payments for the Force-Placed Policies (and contemporaneous addition of the costs of those payments to the balance of the Loan) were made in 2018 (for the First Policy) and 2019 (for the Second Policy), then the actions underlying Plaintiff's Subsection 5 claim took place before Section 280-b's went into effect.

Plaintiff fails, however, to plead any injury resulting from the Defendants' alleged failure to provide the notice required by Subsection 4(b).  Plaintiff's new, separate contention that a claim lies under NY RPL § 280-b(3)(c) because Defendants allegedly violated 11 N.Y.C.R.R. § 227.5, a regulation promulgated pursuant to NY RPL § 280-b, is not pleaded in the complaint and is improperly raised in its opposition brief.  "[A] party cannot amend its pleading through its opposition brief[.]"  Maxim Grp. LLC v. Life Partners Holdings, Inc., 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010) (citation omitted).

For these reasons, Defendants' motion is granted insofar as it is directed to Plaintiff's claim under NY RPL § 280-b, but Plaintiff is granted leave to amend her filing to plead facts showing that NY RPL § 280-b was in effect at the time of the alleged violations, that Plaintiff suffered cognizable injury resulting from Defendants' alleged violations of Subsection 4(b), and/or that Defendants' conduct was violative of Subsection 5.

<u>Breach of Contract "by Reason of" Violations of Federal and State Law (Counts Three and Four)</u>

Plaintiff pursues claims for breach of contract on the general theory that Defendants' alleged violations of federal and state law constitute a breach of the Loan Agreement.  "Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  <u>Fischer & Mandell, LLP v. Citibank, N.A.</u>, 632 F. 3d 793, 799 (2d Cir. 2011).  The Loan Agreement, at Paragraph 17 of the Mortgage and Paragraph 6.4 of the HECM Agreement, provide, in pertinent part, as follows:

> Governing Law . . .  This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located.

(Mortgage ¶ 17; HECM Agreement ¶ 6.4.)  Plaintiff claims that this provision incorporates RESPA, RESPA Regulation X, NY RPL 280-b, and 11 N.Y.C.R.R. § 227.5 into the Loan Agreement (Complaint ¶¶ 103, 116, 117) and that, by violating these statutes, Defendants breached the Loan Agreement.

As a threshold matter, the Court must consider whether Paragraph 17 of the Mortgage and Paragraph 16.4 of the HECM incorporate these statutes into the Loan Agreement.  They do not.  Although the relevant provisions identify the body of law that governs the terms and performance of the Loan Agreement, those terms do not incorporate any particular legal provisions, much less the entire body of federal and state law, into the Agreement.  Similar arguments have been rejected by courts in this Circuit.  <u>See</u> <u>Broder v. Cablevision Sys. Corp.</u>, 329 F. Supp. 2d 551, 558 (S.D.N.Y. 2004), <u>aff'd</u>, 418 F.3d 187 (2d Cir. 2004) ("[T]he provision does not by its terms incorporate the statutes . . . .  The words do not evidence an intent on the

part of the customer and [defendant] to incorporate all provisions of all applicable statutes.")); see also Gunther v. Capital One, N.A., 703 F. Supp. 2d 264, 270 (E.D.N.Y. 2010) (finding that a contractual provision providing that "[t]hese terms and conditions are subject to all applicable state and federal laws and regulations" was "a mere truism, without effect on the parties' rights or responsibilities" that did not incorporate federal law into the contract).  Therefore, the Court cannot find on the facts alleged that the Loan Agreement incorporates the relevant provisions of RESPA, RESPA Regulation X, NY RPL 280-b, and 11 N.Y.C.R.R. § 227.5.  (Complaint ¶¶ 103, 106, 117.)[6]

For these reasons, Defendants' motion is granted insofar as it seeks dismissal of Counts Three and Four of the Complaint.

Breach of Contract (Count Five)

Count Five asserts that Defendants breached their contractual obligations under the Mortgage and Loan Agreements by charging Plaintiff unauthorized fees for the force-placed insurance.  (Complaint ¶ 129.)  As previously explained, "[u]nder New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages."  Fischer & Mandell, 632 F.3d at 799.  Plaintiff has adequately alleged the existence of a binding agreement, (Complaint ¶ 127), substantial

---

[6]     Plaintiff's reliance on Hymes v. Bank of Am., N.A., 408 F. Supp. 3d 171 (E.D.N.Y. 2019), is unavailing.  The Hymes Court expressly declined to consider the question of whether a contractual provision, worded similarly to the one at issue here, incorporated a New York state statute into the contract in question, because the defendants in that case failed to raise this argument to the Court, and denied the defendants' motion to dismiss after rejecting a preemption argument.  Id. at 199 ("Here, [defendant]'s sole argument for dismissal of [the breach of contract claim] is predicated on its incorrect view that GOL § 5-601 is preempted . . . [b]ecause GOL § 5-601 is not preempted, and [defendant] has offered no other legal reason to doubt that it therefore governs the mortgage agreements at issue, [defendant]'s motions to dismiss [the breach of contract claims] are denied.").

performance of her obligation to purchase hazard insurance under the contract, (id. ¶ 3), Defendants' breach resulting in imposition of fees unauthorized by the contract, (id. ¶ 129) and resulting damages, (id.).  This satisfies her prima facie case.  However, Defendants argue that the claim still fails because Plaintiff is not a signatory to the Loan Agreement and therefore lacks privity with the Defendants and standing to assert breach of contract claims, and because she failed to identify a specific contractual provision violated.  (Docket entry no. 26 at 12.)  These arguments are unavailing.

First, as discussed supra, as administrator of her father's Estate, Plaintiff has standing to seek relief on behalf of the Estate.  See Hallingby, 693 F. Supp. 2d at 364 n.4 ("The Court finds that as to the breach of contract claim based upon the [agreement underlying the claim] – a contract between the decedent and [defendant] – [plaintiff] properly sues [defendant] in her capacity as executrix.").

Second, contrary to Defendants' assertions, Plaintiff has adequately identified a provision of the contract that Defendants violated by charging the force place insurance fees. (See Complaint ¶¶ 127, 129.)  Specifically, Plaintiff identifies the force place provisions in the Loan Agreement, which outline Plaintiff's obligation to maintain hazard insurance and, if Plaintiff fails to do so, empowers the Lender to "do and pay whatever is necessary to protect the value of the property . . . including payment of taxes, hazard insurance, and other items." (Mortgage ¶ 5; see also id. ¶¶ 2, 3; HECM Agreement ¶ 2.10.)  Plaintiffs adequately allege that Defendants violated those terms of the Loan Agreement by utilizing the power to charge forced insurance premiums when the condition precedent had not been met — in other words, when Plaintiff had not failed their obligation to provide hazard insurance.

Therefore, the Court finds that Plaintiff has adequately plead a claim for breach of contract arising from the Defendants' imposition of force-insurance premiums.  Defendants' motion to dismiss Count Five of the Complaint is accordingly denied.

GBL § 349 (Count Six)

Section 349 of New York's General Business Law makes unlawful "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 349(a).  To assert a viable claim under Section 349, "a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result."  Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).  "Whether a representation or an omission, the deceptive practice must be likely to mislead a reasonable consumer acting reasonably under the circumstances."  Nick's Garage, Inc. v. Progressive Casualty Ins. Co., 875 F.3d 107, 124 (2d Cir. 2017) (quoting Stutman v. Chem. Bank, 95 N.Y.2d 24, 29 (2000)).  At the motion to dismiss stage, "an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."  Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005).  Thus, "the deceptive practice . . . need not reach the level of common law fraud."  Stutman, 95 N.Y.2d at 29.  Plaintiff alleges that Defendants' conduct in this action is part of a

> scheme . . . to double-bill New York homeowners for hazard insurance and to impose force placed insurance premiums and related fees, interest, and MIP on the loans of homeowners who already maintain hazard insurance. Among the deceptive practices related to that scheme are, (a) Asserting force placed insurance was required to be obtained without first obtaining proof that the borrowers or their representatives failed to maintain hazard insurance; and (b) Asserting force placed insurance was required to be obtained while ignoring oral and written notices provided by borrowers

providing notice and/or proof that borrowers or their representatives purchased and/or maintain hazard insurance.

(Complaint ¶ 136.)

To state a claim under Section 349, a plaintiff "must charge conduct of the defendant that is consumer-oriented." Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25 (1995). To make this showing, the Plaintiff "need not show that the defendant committed the complained-of acts repeatedly . . . but instead must demonstrate that the acts or practices have a broader impact on consumers at large." Plaintiff must therefore pass "the threshold test in that the acts [she] complain[s] of are consumer-oriented in the sense that they potentially affect similarly situated consumers." Nick's Garage, 875 F.3d at 125 (citation omitted). "Patterned after the Federal Trade Commission Act, [Section 349] only prohibits those deceptive practices which are of a recurring nature and affect the public interest." Quail Ridge Assoc. v. Chem. Bank, 162 A.D.2d 917, 921 (N.Y. App. Div. 3d Dep't 1990). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." Oswego, 85 N.Y.2d at 25.

Defendants argue that "this Action involves a unique fact pattern about one loan in which a hazard insurance policy lapsed after the borrower's death." (12(b)(6) Motion at 15.) The Second Circuit recently considered a similar case, Shakespeare v. Compu-Link Corp., 848 F. App'x. 474 (2d Cir. 2021), in which Celink was also a defendant. In that case, the plaintiff alleged that Celink prematurely commenced a repair foreclosure for failure to conduct certain upkeep on her property, pre-paid property tax on her behalf and, when she failed to reimburse Celink for that payment, initiated a second foreclosure action. In vacating, by summary order, the district court's dismissal of the plaintiff's Section 349 claim, the Second Circuit held that the plaintiff had "satisfied the threshold test in that the acts she complains of are consumer-oriented

in the sense that they potentially affect similarly situated consumers."  Shakespeare, 848 F.

App'x at 476 (citation and internal quotation marks omitted).

By comparison, cases deemed too unique or individualized to fall under the

auspices of Section 349 are far more singular than those claimed here.  See Genesco Ent. v.

Koch, 593 F. Supp. 743, 752 (S.D.N.Y. 1984) (dismissing a Section 349 stemming from a dispute

over a rental of Shea Stadium for a concert on the grounds that "the deceptive practices this

statute seeks to combat involve recurring transactions of a consumer type"); see also Quail Ridge

Assoc., 162 A.D.2d at 920-21 (concluding that a complex, multimillion dollar transaction "is a

commercial transaction of the 'single shot' type" outside the scope of Section 349).  The instant

case is much closer on its facts to Shakespeare than it is to Genesco or Quail Ridge, and the

Court finds that the consumer-oriented element of Section 349 is satisfied here.

As to the second element, Section 349 "requires proof of an actual

misrepresentation or omission to a consumer."  Miller v. Wells Fargo Bank, N.A., 994 F. Supp.

2d 542, 557 (S.D.N.Y. 2014) (quoting Goshen v. Mut. Life. Ins. Co., 98 N.Y.2d 314, 325 (2002)).

A misrepresentation is misleading if it is "likely to mislead a reasonable consumer acting

reasonably under the circumstances."  Oswego, 85 N.Y.2d at 26.  "New York courts have held

that collecting fees in violation of other federal or state laws may satisfy the misleading element

of § 349."  Shakespeare, 848 F. App'x at 476 (quoting Cohen v. JP Morgan Chase & Co., 498

F.3d 111, 126 (2d Cir. 2007)).  Plausibly alleging such violations is, at the motion to dismiss

stage, sufficient to make out this element of a Section 349 claim.  See Cohen, 498 F.3d at 127

("We express no opinion as to whether [the plaintiff] will, in fact, show that the challenged . . .

fee violates RESPA § 8(b), but while she pursues that claim, we cannot conclude . . . that, as a

matter of law, the charge cannot constitute a deceptive practice in violation of § 349); see also

WorldHomeCenter.com, Inc. v. PLC Lighting, Inc., 851 F. Supp. 2d 494, 500 (S.D.N.Y. 2011)

("[E]xpress[ing] no opinion as to whether the plaintiff will ultimately prove" an allegation

stemming from a warranty disclaimer policy, but holding that, on motion to dismiss, "the Court

cannot conclude . . . as a matter of law, the warranty disclaimer policy is not a deceptive trade

practice in violation of Section 349[.]").  Similarly, the Court expresses no opinion as to whether

Plaintiff's RESPA claim will ultimately prove successful.  But at this early stage the Court

cannot, as a matter of law, conclude that Defendant's actions are not deceptive practices under

Section 349.

As Plaintiff has also pled injury,[7] the Court finds Plaintiff to have satisfied the

three elements of a Section 349 claim, and Defendants' motion to dismiss is denied as to this

claim.

Violations of Other States' Consumer Protection Laws (Count Seven)

In addition to claims on behalf of the Estate, Plaintiff purports to assert claims on

behalf of "qualifying class members" under statutes "that protect consumers [from] unfair,

deceptive, misleading and/or unconscionable acts, practices, or conduct" in all fifty states.

(Complaint ¶ 145.)  Defendants argue that Plaintiff lacks standing to pursue claims under other

states' consumer protection statutes.  (12(b)(6) Motion at 19 ("Plaintiff may only assert a state

claim if she resides there, does business in, or has some other connection to that state—which is

not the case here.").)  While questions of standing are properly brought in a motion to dismiss

---

7       The Court here notes the Second Circuit's recent guidance that the injury element of
        Section 349 does not require plaintiff to allege injury independent of damages alleged
        under other, overlapping claims.  Milligan v. GEICO Ins. Co., No. 22-3726-CV, 2022 WL
        433289 (2d Cir. Feb. 14, 2022) (stating that Second Circuit precedent "do[es] not
        establish a requirement that a plaintiff allege an injury under § 349 independent of their
        contract damages" (internal punctuation omitted)).

under Rule 12(b)(1), because a plaintiff's standing to sue implicates the Court's power to hear

the case, the Court must consider the issue even if it is raised in a separate pleading.  See

Keepers, Inc. v. City of Milford, 807 F.3d 24, 39 (2d Cir. 2015) (noting that standing may be

raised "for the first time on appeal").

       In Langan v. Johnson & Johnson Consumer Companies, Inc., 897 F.3d 88 (2d Cir.

2018), the Second Circuit considered precisely this issue — whether a plaintiff "has standing to

bring a class action on behalf of unnamed, yet-to-be-identified class members from other states

under those states' consumer protection laws" — and answered in the affirmative:

> [W]e write to make explicit what we previously assumed in In re
> Foodservice Inc. Pricing Litigation, 729 F.3d 108 (2d Cir. 2013): as long
> as the named plaintiffs have standing to sue the named defendants, any
> concern about whether it is proper for a class to include out-of-state,
> nonparty class members with claims subject to different state laws is a
> question of predominance under Rule 23(b)(3), id. at 126-27, not a
> question of "adjudicatory competence" under Article III.

Langan, 897 F.3d at 93.  In explaining the basis for its decision, the Second Circuit

continued:

> This approach of considering variations in state laws as questions of
> predominance under Rule 23(b)(3), rather than standing under Article III,
> makes sense . . . [s]ince class action plaintiffs are not required to have
> individual standing to press any of the claims belonging to their unnamed
> class members, it makes little sense to dismiss the state law claims of
> unnamed class members for want of standing when there was no
> requirement that the named plaintiffs have individual standing to bring
> those claims in the first place.

Id. at 95 (citation omitted).  Consistent with Langan, the Court finds that Plaintiff, who seeks to

represent unnamed plaintiffs in other states who were allegedly injured in the same way by the

same conduct of the defendant, has standing to pursue this action on their behalf.  The question

of predominance is a separate one, as is the question of whether such claims under the laws of

other states would be viable on the merits.  Defendants' motion to dismiss these claims for lack

of standing is therefore denied.

    Unjust Enrichment (Count Eight)

        Under New York law, "[t]he notion of unjust enrichment applies where there is no

contract between the parties."  Maryland Cas. Co. v. W.R. Grace & Co., 218 F.3d 204, 212 (2d

Cir. 2000); see also IDT Corp. v. Morgan Stanley Dean Witter & Co., 12 N.Y.3d 132, 142 (2009)

("Where the parties executed a valid and enforceable written contract governing a particular

subject matter, recovery on a theory of unjust enrichment for events arising out of that subject

matter is ordinarily precluded.")  Here, the subject matter at issue is governed by the valid and

enforceable contract entered into by the Estate's decedent and the Defendants.  Plaintiff's unjust

enrichment claim is therefore duplicative of her breach of contract claim, and Defendants'

motion to dismiss this claim is granted.


                             C<small>ONCLUSION</small>

        For the foregoing reasons, Defendants' Jurisdictional Motion (docket entry no.

25) is granted to the extent Plaintiff purports to sue in her capacity as a beneficiary of the Estate

and is denied in all other respects.  Defendants' Venue Motion (docket entry no. 33) is denied in

its entirety.  Defendants' Federal Rule of Civil Procedure 12(b)(6) motion (docket entry no. 26)

to dismiss the complaint for failure to state a claim upon which relief may be granted is

GRANTED as to Counts Two, Three, Four and Eight, and is DENIED as to Counts One, Five,

Six, and Seven.

        Plaintiff is granted leave to amend her complaint to replead Count Two in a

manner consistent with the foregoing discussion of that count.  Any second amended complaint

must be filed by **April 17, 2024**.  Failure to timely file a further amended complaint will result in dismissal of Count Two with prejudice and without further advance notice.  Counts Three, Four, and Eight are hereby dismissed with prejudice.  This Memorandum Opinion and Order resolves docket entry nos. 25, 26, and 33.

This case remains referred to Magistrate Judge Figueredo for general pretrial management.

SO ORDERED.

Dated: March 27, 2024
New York, New York

**/s/ Laura Taylor Swain**
LAURA TAYLOR SWAIN
Chief United States District Judge