UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARIANNE RENOIS AS
ADMINISTRATOR, FIDUCIARY AND
BENEFICIARY OF AND FOR THE ESTATE
OF ELLIS DEANGELO, MYRTEEN LEE
and TAUNA THOMPSON on behalf of
themselves and all others similarly situated,

                      Plaintiffs,

              -against-

WVMF FUNDING, LLC, and COMPU-LINK
CORPORATION D/B/A CELINK,

                      Defendants.

No. 20-CV-9281-LTS-VF

---

<u>MEMORANDUM ORDER</u>

Marianne Renois, "as administrator, fiduciary and beneficiary of and for the Estate of Ellis DeAngelo" ("Renois"), Myrteen Lee ("Lee"), and Tauna Thompson ("Thompson") (collectively, "Plaintiffs") bring this proposed class action (the "Action") against WVMF Funding, LLC ("WVMF") and Compu-Link Corporation ("Celink," and, with WVMF, the "Defendants"), asserting claims for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(k) and (l), and its implementing regulation, RESPA Regulation X, 12 C.F.R. § 1024.37 ("Count One"), and of New York Real Property Law ("NY RPL") § 280-b ("Count Two"), for breach of contract "by reason of the contract's express terms" ("Count Three"), for violations of New York General Business Law ("GBL") § 349 ("Count Four"), and, with respect to Thompson and all others similar situated, violations of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE § 1770(a), ("Count Five"), California's Business and Professions Code, CAL. BUS. & PROF. CODE § 17200 <u>et seq.</u> ("Count Six"), and for violation of the rights of out-of-state, to-be-named plaintiffs under the consumer protection laws

of other states ("Count Seven").  (Docket entry no. 96 (the "Second Amended Complaint" or "SAC").)  The Court has subject matter jurisdiction of this action under 28 U.S.C. sections 1331 and 1367.

Pending before the Court is Defendants' motion to dismiss Count Two of the SAC, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted.  (Docket entry no. 82 (the "Motion").)  The Court has reviewed the parties' submissions[1] carefully and, for the following reasons, grants in part and denies in part the Motion.

BACKGROUND

The general factual allegations underlying this case are set forth in the Court's March 27, 2024 Memorandum Opinion and Order (docket entry no. 74 (the "March Opinion")), familiarity with which is presumed for the purposes of this Motion.  The amended allegations relevant to the instant motion practice are described below.  The Court assumes all well-pleaded factual allegations in the Second Amended Complaint to be true for the purpose of this motion.

In 2010, Jean and Ellis DeAngelo obtained a Home Equity Conversion Mortgage (HECM (the "Loan")) from Mortgage Enterprises, Ltd., and Financial Freedom.  (SAC ¶ 11.)

---

[1]    Following the Court's March 27, 2024 Memorandum Order, granting in part and denying in part Defendants' first motion to dismiss, Plaintiff Renois amended her Complaint to replead Count Two.  (Docket entry no. 75 (the "First Amended Complaint" or "FAC").)  Defendants moved to dismiss the repleaded Count Two of the FAC.  (See MTD.)  Renois subsequently amended the FAC to add the claims of Plaintiffs Lee and Thompson.  (See SAC.)  The parties stipulated that their respective submissions for the Motion to Dismiss Count Two of the FAC shall remain applicable to Count Two of the SAC, the operative pleading.  (See docket entry no. 97.)  Defendants do not move to dismiss any additional claims pleaded in the SAC.  (See docket entry no. 100 ("Answer to SAC").)  Accordingly, the relevant motion practice comprises the briefs submitted in connection with the motion to dismiss the FAC.  (Docket entry nos. 83, 85, 88.)

An HECM is a "reverse mortgage" insured by the federal government that enables the borrower to withdraw a portion of the equity from his or her home. (Id. ¶ 16.) Attached to the Complaint are a copy of the DeAngelos' mortgage (SAC, Ex. A (the "Mortgage")) and Closed-End Fixed Rate Home Equity Conversion Loan Agreement (SAC, Ex. B (the "HECM Agreement") (together with the Mortgage, the "Loan Agreement")). The Loan was secured by Jean and Ellis DeAngelo's home (the "Property"), and the lender was permitted to require immediate payment of the Loan balance upon the deaths of the borrowers. (Mortgage ¶ 9.) The Loan was subsequently sold and acquired by WVMF, which retained Celink as the sub-servicer of the Loan. (SAC ¶ 11.)

Under the terms of the Loan Agreement, the "Borrower" was required to "pay all property charges," including "hazard insurance premiums . . . in a timely manner, and . . . provide evidence of payment to Lender." (Mortgage ¶ 2.) To fulfill this obligation, the Borrower was required to purchase insurance "against any hazards, casualties, and contingencies, including fire." (Id. ¶ 3.) The Loan Agreement provided that, if the Borrower failed to maintain hazard insurance on the Property, "Lender may do and pay whatever is necessary to protect the value of the Property . . . including payment of taxes, hazard insurance, and other items mentioned in Paragraph 2." (Id. ¶ 5; HECM Loan ¶ 2.10.5.) In the event of a "pattern of missed payments," the Lender was permitted to "establish procedures to pay the property charges from Borrower's funds as if Borrower elected to have the Lender pay the property charges" and should make such payments "from a line of credit [to the Borrower] . . . to the extent possible." (HECM Loan ¶¶ 2.10.5, 2.16.)

Renois, as administrator and fiduciary of the DeAngelo's estate, maintained hazard insurance on the Property as required and provided oral and written notice to Celink

regarding the policy on March 8, 2018, September 14, 2018, November 5, 2018, February 2, 2020, and June 8, 2020.  (SAC ¶ 25.)  Despite these alleged communications, on August 28, 2018, Celink sent Renois a "second and final notice" representing that the hazard insurance policy on the Property had expired and asking for notice of an active policy.  (Id. ¶ 67.)  On October 1, 2018, Celink notified Renois that it had obtained an insurance policy, per the terms of the Loan Agreement, and that "the cost of any insurance we purchase will be added to [Renois'] loan balance."  (Id. ¶ 68.)  This policy (the "First Policy") had an annual premium of $2,644.69, which was added to the balance of the Loan.  (Id. ¶ 27.)  In 2019, Celink purchased a second force-placed insurance policy (the "Second Policy" (together with the First Policy, the "Force-Placed Policies")), for which it added a charge of $3,022.50 to the balance of the Loan.  (Id. ¶ 28.)  On June 1, 2020, Celink sent Renois a letter stating that Celink would renew the force-placed insurance policy on the Property.  (Id. ¶ 70.)

On July 30, 2020, Celink notified Renois that it had received confirmation that hazard insurance had been in place for the entirety of the period for which it had purchased insurance for the home.  (Id. ¶ 32.)  Celink "admitted Defendants' mistake and refunded only the [Premiums] added by Celink" to the balance of the Loan (id. ¶ 123 (emphasis in original)), but this credit was applied to the loan balance "long after the 15-day refund deadline imposed by RESPA and New York law."  (Id.)  Defendants still have not "refunded or credited back the charges, interest, and [mortgage insurance premiums]" related to its imposition of force-placed insurance on Plaintiff's loan.  (Id.)  Additionally, in the March, April, May, and June 2020 monthly loan statements sent to Renois, Defendants failed to include any notice regarding the force-placed insurance premiums as, Plaintiffs argue, was mandated by NY RPL section 28-b(4)(b).  (Id. ¶¶ 56-57.)

In the March Opinion, the Court granted the Defendants' motion to dismiss Count Two for failure to state a claim upon which relief may be granted.  (Docket entry no. 74 (the "March Opinion").)  The Court found, in relevant part, that Renois had not alleged that Defendants' violative conduct took place after section 280-b's effective date (March 5, 2020), and that any claims asserting violations of section 280-b(3)(c) premised on various violations of the New York Codes, Rules and Regulations ("N.Y.C.R.R.") were not sufficiently plead in the then-operative pleading.  (Id. at 22.)  Plaintiffs have since amended their Complaint to assert claims arising from violations of section 280-b(4) and 280-b(3)(c).

<u>DISCUSSION</u>

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow [] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In deciding a Rule 12(b)(6) motion to dismiss, the Court must "draw all reasonable inferences in [plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." Faber v. Metro. Life Ins. Co., 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  "In adjudicating a motion to dismiss, a court may consider only the complaint, any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies." ASARCO LLC v. Goodwin, 756 F.3d 191, 198 (2d Cir. 2014) (citation omitted).

The Amended Count Two asserts claims for violations of New York Real Property Law Section 280-b under two theories.  First, Plaintiffs assert that Defendants violated section

280-b(4)(b) and title 3 of the N.Y.C.R.R. section 79.11(a)(6) by failing to provide proper notice of the force-placed insurance premiums on the periodic loan statements Renois received monthly between March and June 2020.  (SAC ¶¶ 140-42.)  Second, Plaintiffs claim that Defendants violated section 280-b(3)(c) by failing to refund the force-placed insurance premiums and related charges and interest within 15-days of being provided notice that the borrower-maintained insurance, in violation of 11 N.Y.C.R.R. section 227.5.  (Id. ¶¶ 143-44.)

Defense Waiver

In this motion practice, Defendants argue that Plaintiffs' amended Count Two still fails to state a claim because (1) Section 280-b(4) only applies to insurance payments that were derived from the "proceeds of the mortgage," which Defendants assert is not the case here; (2) Section 280-b was not in effect during the time period; and (3) Defendants do not qualify as "insurers, insurance producers, or affiliates," as is necessary to bring a claim under section 280-b(3)(c) for violation of 11 N.Y.C.R.R. section 227.5.  (See docket entry no. 83 ("Def. Mem.").)

At the outset, Plaintiffs argue that the Court should not consider the merits of any of these defenses because Defendants could have, but did not, raise these arguments in their previous motion to dismiss the original Complaint.  (See docket entry no. 85 ("Pl. Mem.") at 3-4; see also docket entry no. 26 ("First MTD").)  Rule 12(g)(2) states that, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its early motion."  Fed. R. Civ. P. 12(g)(2).  Some courts in this district have interpreted this provision to bar successive 12(b)(6) motions raising arguments previously available to the defense, which must instead be raised by an alternative motion described under Rule 12(h)(2). See Easton Rae, LLC v. Violet Grey, Inc., No. 21-CV-6234-JPO, 2023 WL 2691459, at *4-5

(S.D.N.Y. Mar. 29, 2023).  This approach, however, is far from uniform.  See Ballast v. Workforce7 Inc., No. 20-CV-3812-ER, 2024 WL 307966, at *5 (S.D.N.Y. Jan. 25, 2024), reconsideration denied, 2024 WL 1530654 (S.D.N.Y. Apr. 8, 2024) ("[T]he greater weight of case law in this District suggests that failure-to-state-a-claim arguments are not waivable and may be brought in a successive Rule 12 motion." (collecting cases)); United States ex rel. Kolchinsky v. Moody's Corp., 238 F. Supp. 3d 550, 555 (S.D.N.Y. 2017) ("Rule 12 provides that while procedural defenses are waived if omitted from a pleading or pre-answer motion, a defendant cannot waive the more fundamental 12(b)(6) defense—that the plaintiff has no legal right to recovery in the first place." (citation omitted)).

        As explained below, Defendants' motion is not frivolous.  See Sharma v. Skaarup Ship Mgmt. Corp., 699 F. Supp. 440, 444 (S.D.N.Y. 1988), aff'd, 916 F.2d 820 (2d Cir. 1990) (finding defendants' second motion to dismiss procedurally proper where it was filed in good faith and denial of the motion was not necessary to "further the purpose of Rule 12 to prevent dilatory motion practice" (internal citations omitted)).  Barring Defendants from making these arguments in this 12(b)(6) motion and instead requiring that Defendants "re-raise [] identical arguments as a 12(c) motion after answering the SAC" would undermine, not promote, the purpose of Rule 12(g) by creating inefficient and dilatory motion practice.  See Ballast, 2024 WL 307966, at *5.  The Court thus finds that Defendants did not waive the arguments asserted in this motion practice and will consider the merits of each in turn.[2]

---

[2]     Defendants also assert that the Amended Count Two contains new factual allegations and alternate theories of liability which were not contained in the original Complaint, and thus (some of) the arguments raised in this motion practice "could not have [been] raised . . . in the prior motion."  (Docket entry no. 88 ("Reply") at 6.)  Because the Court finds that the arguments are not precluded regardless of their prior availability, the Court need not consider this argument.

Proper Notice

Section 280-b(4)

Plaintiffs first assert that Defendants violated section 280-b(4)(b) by failing to include the required notice in the March-June 2020 statements sent to Renois' parents.  (SAC ¶¶ 141-42.)  Section 280-b(4)(b) mandates that the following notice appear "on the borrower's periodic account statement":

> YOUR TAXES AND INSURANCE ARE CURRENTLY BEING PAID BY THE PROCEEDS OF THIS MORTGAGE.  THE FUNDS THAT HAVE BEEN SET ASIDE ARE EXPECTED TO BE EXHAUSTED AFTER THE TAX AND INSURANCE PAYMENTS OF (SPECIFY EXPECTED MONTH AND YEAR).  IF THE PROCEEDS OF THIS MORTGAGE CANNOT PAY THE TAXES AND INSURANCE, YOU MUST PAY THE OBLIGATIONS OR YOUR HOME MAY BE LOST TO FORECLOSURE.  PLEASE NOTE THAT AS TAX AND INSURANCE AMOUNTS CAN VARY YOU SHOULD CONTINUE TO REVIEW THIS NOTICE FOR CHANGES.

N.Y. R.P.L. § 280-(b)(4)(b) (Westlaw through L.2025).

Defendants claim this notice-requirement was inapplicable because, under the terms of the statute, notice is only required "where the payments are derived from the proceeds of the mortgage."  (Def. Mem. at 8 (citing N.Y. R.P.L. § 280-b(4)(b)).)  Defendants assert that no allegations in the operative complaint support an inference that the force-place insurance premiums were paid from the "proceeds of the mortgage," which would include either "the borrower's line of credit or lifetime expectancy set aside."  (Def. Mem. at 8.)

Defendants' argument is unavailing.  The Second Amended Complaint attaches and incorporates by reference the terms of the Home Equity Conversion Loan Agreement, which specifies that, "[i]f Borrower fails to pay the property charges in a timely manner and has not elected to have Lender make the payments, Lender shall pay the property charges as a Loan Advance as required under Section 2.16."  (Docket entry no. 96-2 ("HEC Loan Agreement")

§ 2.10.4.)  Section 2.16 expressly provides that these advances "shall be made from a line of

credit under Section 2.6. or 2.7 to the extent possible."  (Id. § 2.16; see also docket entry no. 96-3

("Adjustable Rate HECM") § 2 ("Borrower shall pay all property charges consisting of taxes,

hazard insurance premiums, . . . unless Lender pays property charges by . . . . charging such

payments to a line of credit as provided for in the Loan Agreement.").)  The Court finds that,

under the terms of the agreements, Plaintiffs have plausibly alleged that Defendants paid for the

imposed premiums and related charges through the line of credit, adding the disbursements to the

balance of Plaintiff Renois' parents' loan.  (SAC ¶ 3.)  At this stage, these allegations plausibly

plead that the Defendants' payments were derived from the proceeds of the mortgage, within the

meaning of section 280-b, and that Defendants thus were required to give the statutorily required

notice.  Defendants' motion to dismiss is accordingly denied with respect to Renois' claim

arising from alleged violations of section 280-b(4)(b).

### Effective Date

Plaintiffs next contend that Defendants' failure to provide notice violated section

280-b(3)(c) by violating various provisions of Part 79 of the N.Y.C.R.R., which was amended

pursuant to the 2020 amendment of section 280-b.  (SAC ¶ 143.)  Section 280-b(3)(c) provides

that "[t]he superintendent is authorized to promulgate such rules and regulations as he or she

shall deem necessary to implement the provisions of this subdivision."  N.Y. R.P.L. § 280-b(3)(c)

(Westlaw through L.2025).  The current version of section 79.11(a) provides that a "mortgagee or

broker, as applicable, may not . . . fail to make any disclosure to a consumer required by and at

the time specified by any applicable federal law, regulation, or directive."  N.Y. COMP. CODES R.

& REGS. tit. 13 § 79.11(a)(6).  Defendants correctly argue, however, that section 79.14 provides,

"for one hundred and twenty (120) days including and following the March 5, 2020 effective

date of this Part, mortgages either originating or servicing RPL 280-b loans shall not be in violation of this Part if they comply with the Part 79 that was in effect prior to March 5, 2020." Id. § 79.14 ("Transition Provision").  Essentially, Part 79.14 provides for a 120-day transition period for compliance with "this Part" – referring clearly to the regulations promulgated in Part 79.  Therefore, the Court finds that the regulation in Part 79.11(a)(6) was not in effect before July 3, 2020, and Plaintiffs' claims premised on the lack of required notice in the March, April, May, and June 2020 statements fail to state a claim under that regulation.

To the extent that Defendants argue that all of Plaintiffs' claims under section 280-b fail because of the 120-day transition period afforded by Section 79.14 (Def. Mem. at 7-8), Defendants misread the scope of the Transition Provision.  The text of Part 79.14 clearly limits the transition period to the regulations imposed by Part 79.  See N.Y. COMP. CODES R. & REGS. tit. 13 § 79.14 ("[M]ortgagees either originating or servicing RPL 280-b loans shall not be in violation of this Part if they comply with the Part 79 that was in effect prior to March 5, 2020." (emphasis added)).  Defendants provide no basis from which this Court can conclude that the wording of Section 79.14 applies broadly to N.Y. R.P.L. section 280-b, which was enacted after a long notice period and deemed effective on March 5, 2020.  (See March Opinion at 22; Pl. Mem. at 4-5; docket entry no 85-2 ("Governor's Bill Jacket") at 10 (stating that N.Y. R.P.L. § 280-b had an "effective date" on the "90th day after it shall have come a law" and was signed on December 6, 2019).)  Therefore, Defendants' Motion is granted only with respect to Plaintiffs' claims arising from the alleged violations of section 79.11(a)(6) and is denied with respect to Plaintiffs' claims under section 280-b(4)(b).

Refund

Finally, Plaintiffs assert that Defendants violated section 280-b(3)(c) by failing to

provide a refund of the force-placed insurance premiums within fifteen days of receiving notice

from the borrower that they had maintained hazard insurance, in violation of 11 N.Y.C.R.R.

§ 227.5.[3]  (SAC ¶¶ 143-45.)  Plaintiffs assert that Renois "repeatedly" provided Celink notice

that she maintained hazard insurance in 2019 and 2020 and that, despite this notice, Defendants

improperly failed to refund the premiums paid within fifteen days of the statute's effective date

of March 5, 2020.  (See Pl. Mem. at 6-7.)  Defendants argue that section 227.5 is inapplicable to

either WVMF or Celink because the text of the regulation states that it applies only to

"insurer[s], insurance producer[s], or affiliate[s]."  N.Y. COMP. CODES R. & REGS. tit. 11 § 227.5

(stating that, within 15 days of receiving appropriate notice, "an insurer, insurance producer or

affiliate shall remove force-placed insurance from the borrower's property and refund . . . all

[redundant] force-placed insurance premiums paid by the servicer or borrower" (emphasis

added)).

Section 227.1 provides the relevant definitions of these key terms.  "Insurer

means an authorized insurer," id. § 227.1(g), "insurance producer means a licensed insurance

producer," id. § 227.1(h), and "affiliate means any company that controls, is controlled by, or is

under common control with an insurer or insurance producer," id. § 227.1(b).  Plaintiffs plead no

---

[3]     In the FAC, Plaintiffs also asserted a cause of action under section 280-b(3)(c) for
Defendants' alleged violation of 11 N.Y.C.R.R. § 227.3, a regulation which limits the
amount of coverage an insurer can issue in force-placed insurance.  (See FAC ¶¶ 112-13;
see also Def. Mem. at 5-6 (moving to dismiss Plaintiffs' claims premised on violations of
section 227.3 and 227.5).)  Plaintiffs have since conceded that they will not be pursuing
claims for violations of section 227.3 (Pl. Mem. at 4 n.3), and those claims are not
reflected in the now-operative pleading, the Second Amended Complaint.  (See SAC
¶¶ 137-48.)

allegations supporting a plausible inference that either Defendant was a state-licensed insurer or insurance producer.  (See generally SAC.)  Instead, Plaintiffs argue that Celink was "acting as an 'insurance producer' (albeit unlicensed) in New York and is [accordingly] bound by 11 NYCRR § 227.5."  (Pl. Mem. at 7.)  This argument is unpersuasive.  The plain text of the regulation clearly limits its application to licensed insurers, licensed insurance producers, and their affiliates; Plaintiffs' argument ignores the clear definition of the terms as stated in section 227.1. Therefore, the Court finds that Celink does not qualify as an insurance producer within the meaning of the regulation, and Plaintiffs' claims arising under section 227.5 fail to state a claim. The motion to dismiss Count Two is granted with respect to the claims arising under section 227.5.

<h2 style="text-align:center">LEAVE TO AMEND</h2>

"'Leave to amend, though liberally granted, may properly be denied' for 'repeated failure to cure deficiencies by amendments previously allowed' or 'futility of amendment,' among other reasons."  Bischoff v. Albertsons Co., No. 22-CV-4961-CS, 2023 WL 4187494, at *7 (S.D.N.Y. June 26, 2023) (quoting Ruotolo v. City of N.Y., 514 F.3d 184, 191 (2d Cir. 2008)). Plaintiffs have now been permitted multiple opportunities to amend her claims under section 280-b.  Therefore, the Court declines to grant Plaintiffs another opportunity to correct the remaining deficiencies in their claims as identified herein.

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, Defendants' motion to dismiss Count Two of the SAC is granted in part and denied in part.  Plaintiffs' amended Count Two is dismissed with prejudice

in so far as it asserts violations of N.Y. R.P.L. section 280-b(3)(c) arising from the alleged

violations of 3 N.Y.C.R.R. section 79.11(a)(6) and 11 N.Y.C.R.R. section 227.5.  The amended

Count Two survives in all other respects.  This case remains referred to Magistrate Judge

Figueredo for general pretrial management.

        This Memorandum Order resolves docket entry no. 82.

        SO ORDERED.

Dated: New York, New York
      June 24, 2025

                                  /s/ Laura Taylor Swain
                               LAURA TAYLOR SWAIN
                               Chief United States District Judge